JOHN MITCHELL AND OTHERS *vs.* JULIUS HOTCHKISS.

The statute (Gen. Statutes, tit. 17, ch. 1, secs. 17, 18,) provides that, in the case of every corporation, certificates showing its condition shall be filed annually by the president and secretary with the town clerk, and that in case of neglect those officers shall be liable for all the debts of the corporation contracted during the period of such neglect. Held that the statute is a penal one, and that the liability thus imposed is of the nature of a penalty and not of a debt, and that therefore an action brought upon such a liability does not survive the death of the officer thus liable.

ACTION ON THE CASE, under the statute (Gen. Statutes, p. 280, sec. 18,) to recover of the defendant, president of a joint stock corporation, a debt due from the corporation; brought to the Court of Common Pleas of New London County.

The declaration alleged that the defendant, on the first day of July, 1875, was and ever since had been the president of the Star Tool Company, a joint stock corporation organized under the laws of this state and located in the town of Mid-

VOL. XLVIII.—2

dletown in this state; that by the statutes of this state it
became and was his duty as such president annually on or
before the 15th day of August or of February next following
said 1st day of July, 1875, to lodge with the town clerk of
said town a certificate signed and sworn to by him as presi-
dent and by the secretary of the corporation, showing the
condition of the affairs of the corporation as near as the
same could be ascertained on the first day of July or January
next preceding, giving the amount of its capital stock paid
in in cash and in other stock separately, the cash value of
its real estate, the name and number of shares of each stock-
holder, the amount of its debts, and the cash value of its
personal estate and of its credits; that the defendant had,
from said first day of July, 1875, till the date of the writ
(May 19, 1877,) intentionally neglected to lodge such a cer-
tificate with the town clerk of said town, and that none had
been so filed; that said corporation on the 20th day of Sep-
tember, 1876, and during said period, contracted with the
plaintiffs to pay and promised to pay them for value received
the sum of three hundred and seventeen dollars, by its prom-
issory note bearing date that day, payable to the order of the
plaintiffs two months after its date, which note had never
been paid by said corporation though duly demanded; and
that by reason thereof, and by virtue of the statute in such
case provided, the defendant had become and was liable to
pay to the plaintiffs the amount due by said note, which he
had refused to do, though often requested.

The suit was brought to the August term of the court in
1877. While it was pending the defendant died, and the
plaintiffs cited in his executors, who appeared and pleaded in
abatement that the action was for a personal act of wrong on
the part of the said Hotchkiss in intentionally neglecting, as
president of said corporation, to file with the town clerk the
certificate required by law, by which he became liable to pay
the debt of the plaintiffs, and that the action therefore abated
by his death and could not be revived against his executors.
To this plea the plaintiffs demurred.

The court (*Mather, J.,*) held the plea sufficient and ren-

dered judgment for the defendants. The plaintiffs brought the record before this court by a motion in error.

*S. Lucas,* for the plaintiffs.

When persons associate for the transaction of business, all are liable for the debts contracted in the prosecution of that business, unless by statute law they are exempt from personal liability. Hence when doing business as members of a corporation, the question whether they are exempt or not depends upon the terms of the charter of such corporation. By the laws of this state relating to joint stock corporations, which are the corporations' charter, while the stockholders are exempt from liability when they have paid for their stock in full and abstain from withdrawing any of the capital, still the law does not exempt the officers of such a corporation from the common law personal liability, unless they perform all the duties by law required of them. Gen. Statutes, p. 314, sec. 3.

Could any one question the liability of an executor of a deceased stockholder, to pay the debts of the corporation to the amount of the capital stock so improperly withdrawn, whether intentionally or not on the part of the testator? Still such a liability would not depend upon the fact that property had been received by the testator, but upon the fact that the law under which the testator and others, as stockholders of a corporation, had been doing business, provided that conditionally a limited personal liability should exist.

The same principle underlies and governs each case; that is to say, to avoid personal liability, officers and stockholders must comply with the provisions of the law which conditionally exempts them therefrom, and permits them as corporators to do business. The claim of the defendants that the statute is penal in its character, while true in a certain sense, is not true as contended for by them. The liability of an officer who has omitted to perform his duty does not relieve the corporation of its liability to the creditor. It gives the creditor an additional remedy, that is, additional security for his demand; and he can elect which of the remedies he will

pursue. Primarily as between the corporation and the president, however, it is the duty of the corporation to pay the debt. If it does not, and the president is obliged to pay it, he has a legal claim for the amount thus paid against the corporation. Hence the payment of a debt of a corporation by its president is not the payment of a penalty of the amount of such debt. If a penalty the president would have no claim against the corporation for the amount paid. If the president was only liable in case of the insolvency of the corporation, or if he was liable for past indebtedness, as is a trustee by the laws of New York, the defendants' claim would be more plausible. But the president's liability is not dependent upon any such contingency, nor is he liable for any other indebtedness than that contracted during the time he voluntarily omits to comply with the law. The sale of the plaintiff's property was to the corporation, but not on its credit exclusively, but on the faith and credit also of the personal liability of the testator. The liability of the defendants, upon which this action is grounded, is for the payment of the debt of the corporation incurred by it, for which, under the provisions of its charter, the testator became and was concurrently with the company, from the inception of the debt, personally liable. This liability voluntarily assumed, though direct, yet is in the nature of that of a surety, and his remedy is that of a surety in case he is compelled to pay the debt. Hence the liability of the defendants' testator was of such a character that it survived his death, and one for which a suit might have been brought originally against the present defendants. *Booth* v. *Northrop*, 27 Conn., 325; *Bailey* v. *Bussing*, 28 id., 455; *Dayton* v. *Lynes*, 30 id., 354; *Corning* v. *McCullough*, 1 Comst., 47.

*J. Halsey* and *S. A. Robinson*, for the defendant.

It would be unjust to permit this action to survive. The statute upon which it is based is a public act—a police regulation, to prevent deception and fraud; and for this purpose it imposes a penalty. A good government never punishes an innocent person for the guilty act of another. If this action

survives, the dead offender is not punished but his innocent representatives. It matters not whether the penalty be dollars or stripes; in neither case should the representatives suffer it. It is dollars in this case and our opponent therefore says it is a debt; but debt pre-supposes a contract, express or implied. Of course there is no express contract; and as clearly there can be no implied one. The rule as to survival of actions in this state is really the common law rule. Gen. Stat., p. 421, sec. 6. The common law rule is that actions of tort survive only when the offending party has gained some property by the wrongful act—as in trespass and asportation of goods, involving a wrongful conversion of chattels. If a testator had stolen goods and converted them to his own use, an action might survive against his executor to recover their value; but an action for treble damages, under our statute in such case, would not survive. The latter would be pure penalty, the former would be to recover out of the hands of the executor the property that never belonged to him or his testator and was wrongfully detained. The line is clearly drawn by the authorities between the torts that survive and those that do not. Wentw. Office of Executor, 14th ed., 255; Com. Dig. *Administration, B.* 15; 3 Black. Com., 302; 3 Wood. Lec., sec. 73; 1 Chitty Pl. (16th Am. ed.), 77; 2 Add. on Torts, 1127; 1 Wms. Saund., 216, note 1; 2 id., 252, note 7; *Holl* v. *Bradford*, 1 Sid., 88; *Weekes* v. *Trussell*, id., 181; *Moreton* v. *Hopkins*, 2 Keb., 502; *Hambly* v. *Trott*, Cowp., 371; *Powell* v. *Layton*, 2 Bos. & Pul. N. R., 370; *People* v. *Gibbs*, 9 Wend., 29; *Franklin* v. *Low*, 1 Johns., 396; *Cravath* v. *Plympton*, 13 Mass., 454; *Wilbur* v. *Gilmore*, 21 Pick., 252; *Wilder* v. *Aldrich*, 2 R. Isl., 518; *Hanna* v. *Pegg*, 1 Blackf., 181; *U. States* v. *Daniel*, 6 How., 11; *McEvers* v. *Pitkin*, 1 Root, 216; *Booth* v. *Northrop*, 27 Conn., 325; *Dayton* v. *Lynes*, 30 id., 354.

An application of the principles found in the foregoing authorities to the case at bar shows conclusively that the cause of action is not of such a character as to survive. The action arises, *ex delicto*, from a personal act of wrong of the testator, the plea must be "not guilty" of an intentional

neglect or refusal; from the wrongful act no benefit has accrued to the estate of the testator; no money or property of any kind have found their way into the assets of the testator as the direct result of the *delictum*. Judged by every test which the common law proposes as to torts, this cause of action comes within the class that die with the wrongdoer.

The fact that the statute is a penal one emphasizes our claim. Bouvier says a penal statute is one that "inflicts a penalty for the violation of some of its provisions;" and that "a penalty is a punishment inflicted by law—the term is mostly applied to pecuniary punishment." The statute in question imposes a duty to file a certificate of a certain character, and in case of *intentional* neglect or refusal the offender shall be liable to pay certain debts. Gen. Stat., p. 280, secs. 17 and 18. He is liable because he has intentionally, or what is the same, has *wilfully* neglected and refused to perform a duty imposed by law. The measure of the penalty is all the debts contracted by the company during the period of intentional neglect or refusal. The statute says the president "shall be liable," &c. Why liable? Because he has committed an offense which the statute forbids. The liability is created to punish, not a wrong to these plaintiffs, but his contemptuous disregard of the authority of the State. No contract relation or duty is created; to affirm that there is would be to declare the statute unconstitutional. The legislature has no power to make another man's debt my debt, except upon the theory of penalty. My property cannot be taken from me "without due process of law." Admit the element of penalty in this statute and the action upon it dies with the offender; eliminate the element of penalty and you declare the statute unconstitutional.

Look at the statute for a moment for further evidence of its penal character. The creditor's right to recover is not limited by his knowledge of the company's insolvency, nor by the knowledge that the certificate was absolutely false at the time the credit was given; neither could the delinquent officer set up in defence that the company was perfectly solvent and had abundance of property out of which to pay

these very debts. The question is simply this: Is the president guilty or not of a breach of the law? If he is guilty, then he must pay this debt, as a punishment for the intentional wrong.

As a further test, we see that the statute gives the delinquent officer no remedy over against the company for the debt which he pays, and at common law he has no such remedy. *Andrews* v. *Murray*, 33 Barb., 354; *Hill* v. *Frazier*, 22 Penn. St., 320; *Strong* v. *Sproul*, 4 Daly, 328. Why? Because the enforced payment is purely a punishment.

The authorities are abundant which pronounce similar statutes penal. In New York, *Garrison* v. *Howe*, 17 N. York, 458; *Merchants' Bank* v. *Bliss*, 35 id., 412; *Jones* v. *Barlow*, 62 id., 202; *Bank of California* v. *Collins*, 5 Hun, 209; *Shaler & Hall Quarry Co.* v. *Bliss*, 34 Barb., 309; *Reynolds* v. *Mason*, 54 How. Pr. R., 213; *Bird* v. *Hayden*, 1 Rob., 383; *McHarg* v. *Eastman*, 7 id., 137. In Massachusetts, *Halsey* v. *McLean*, 12 Allen, 438. In Ohio, *Lawler* v. *Burt*, 7 Ohio St., 340; *Sturges* v. *Burton*, 8 id., 215. In Maryland, *First Nat. Bank* v. *Price*, 33 Maryl., 487. In New Jersey, *Derrickson* v. *Smith*, 3 Dutch., 166. In Rhode Island, *Moies* v. *Sprague*, 9 R. Isl., 541. In Michigan, *Breitung* v. *Lindauer*, 37 Mich., 217. In Indiana, *Union Iron Co.* v. *Pierce*, 4 Biss., 327. In California, *Irvine* v. *McKeon*, 23 Cal., 472. And this very statute has recently been construed by the United States Supreme Court in the case of *Providence Steam Engine Co.* v. *Hubbard*, 101 U. S. Reps., 188, in which it was held to be a penal statute.

If the statute is penal the action upon it does not survive the death of the party incurring the penalty. See the authorities before referred to.

LOOMIS, J. This action was originally brought by the plaintiffs, as creditors of "The Star Tool Company," a joint stock corporation located at Middletown in this state, against Julius Hotchkiss, then in life but since deceased, to recover the amount of their debt contracted during the period that Hotchkiss as president of the corporation intentionally neg-

lected to comply with the statutory requirements as to filing with the town clerk of Middletown certain certificates showing the condition of the affairs of the corporation. For the purposes of this case it is conceded that Hotchkiss had by his neglect become liable under the statute referred to. But pending the suit and before trial he died leaving a will. The plaintiffs thereupon caused to be issued a scire facias, summoning his executors into court to show cause why they should not be made parties defendant to the suit. The executors appeared and filed a plea in abatement on the ground that the action, originally begun against Hotchkiss, did not upon his death survive against them. To this plea the plaintiffs demurred, but the court overruled the demurrer and dismissed the scire facias, and the question comes before this court for review by the plaintiffs' motion in error.

There is no statute controlling the question under consideration. The only provision is that found in the General Statutes, p. 421, sec. 6, that "if the defendant in any action shall die before final judgment, it shall not abate if it might originally have been prosecuted against his executor or administrator." To determine the question whether an action might originally have been brought to charge the estate of Hotchkiss with the statutory liability referred to incurred by him in his life time, we must invoke the aid of the common law.

The principles of the common law on this subject are embodied in the maxim—"*Actio personalis moritur cum personâ.*"

The executor represents the person of the testator, and in legal consequence may be said to continue his existence with respect to all his debts, covenants and contract obligations, which became due during his life or after his death, except such as depend on his personal skill, in which is always implied the condition that the contractor is not prevented from completing his contract by the act of God.

But all private as well as public wrongs and crimes are buried with the offender. The executor does not represent or stand in the place of the testator as to these, or as to any acts of malfeasance or misfeasance to the person or property

of another; unless some valuable fruits of such acts have been carried into the estate; and this in strictness constitutes no exception to the rule, for the executor in such case cannot be made liable for the tort of his testator, but only for the implied promise which the law raises and allows the injured party to put in the place of the wrong.

In the light of these principles we are called upon to determine the nature of the liability imposed by the statute in question.

By section 17, page 280, of the General Statutes, it is made the duty of the president and secretary of joint stock corporations annually, on or before the 15th day of February or of August, to make and lodge with the town clerk where the corporation is located, a certificate signed and sworn to by them, showing the condition of its affairs as nearly as the same can be ascertained on the first day of January or of July next preceding the time of making such certificate, stating the amount of paid capital, the cash value of its real and personal estate and credits, and the name, residence and number of shares of each stockholder.

Section 18, which creates the liability on which this action is founded, is in these words:—"Any president or secretary of such a corporation who shall intentionally neglect or refuse to comply with the provisions of the preceding section, shall be liable for all the debts of said corporation contracted during the period of such neglect."

We do not see how it is possible to construe this statute as creating or attempting to create any contract relation or duty between the creditors of a corporation and its president. The adoption of such a construction would suggest grave doubts as to the validity of the act which should attempt so arbitrarily to make a debtor out of a stranger to the debt, or in other words, to make the debt of one person the debt of another. There was no privity between Hotchkiss and the plaintiffs; they had no transaction with each other, and the former owed the latter no private duty from which a promise might be implied.

The argument for the plaintiffs seemed to be based princi-

pally upon the assumption that the officers of a corporation are under some original common law liability to pay all the debts contracted by it while they as officers are in default as to the performance of any of the duties prescribed by statute; that their exemption from personal liability under the corporate organization is not an absolute but only a conditional one.

This reasoning is fallacious. There may be cases where the organization is so defective that creditors need not recognise it as a corporate being at all, in which case the so-called officers or active agents in its business transactions may perhaps under some circumstances make themselves personally liable. But conceding the lawful organization and existence of the corporation, the existence of all its members, officers as well as stockholders, so far as its transactions are concerned, become merged in the artificial being, so that in contemplation of law they are utter strangers to those who deal with the corporation; and as stockholders and officers they are never liable except so far as the law makes them liable.

The theory of the plaintiffs' declaration also tends to confute the argument. The action does not profess to be predicated on any promise, original or collateral, express or implied, but is an action on the case founded on the statute. There is nothing in the record to suggest a possibility that the estate of the testator could in any way have been increased or benefited by the misfeasance or non-feasance complained of.

It seems clear that the duty to be performed was a public duty, required by public policy for the general welfare. In the language of Mr. Justice Clifford, in giving the opinion relative to the identical statute we are considering, in the case of *Providence Steam Engine Co.* v. *Hubbard*, 101 U. S. Rep., 188, the act was passed "by the state to enable the business public to ascertain the pecuniary standing of joint stock corporations."

The wilful neglect of the prescribed duty was a public wrong invoking the penalty of the statute; and the statute comes clearly within the definition of a penal one, as given

in 2 Bouvier's Law Dictionary, where it is defined as "a statute that inflicts a penalty for the violation of some of its provisions."

The Supreme Court of the United States in the case just referred to, after full discussion, unhesitatingly pronounced this statute a penal one, to be strictly construed as such, and if penal it necessarily follows that the action upon it will not survive the death of the person for whom the penalty was intended, and the executors are not liable. 3 Williams on Executors, 6th Am. ed., bottom page 1729; *Hambly* v. *Trott*, Cowp., 372; *United States* v. *Daniel*, 6 How., 11.

The view we have taken is well supported by numerous authorities from other jurisdictions.

In *Moies* v. *Sprague, Admr.*, 9 R. Isl., 541, an action was brought to charge the estate of Byron Sprague, deceased, with certain statutory liabilities incurred by the deceased as a stockholder, director and president of the Union Horse Shoe Company, upon certain promissory notes given by the company to the plaintiff or held by him. The third count was for a liability incurred by the decedent as president of the corporation under sections second and third of chapter 128 of the statutes of the state then in force. Section 2d required the president and directors to make a certificate within ten days after the last installment of capital should be paid in, stating the amount of capital so·fixed and paid in, and lodge it with the town clerk for record. Section 3d provided that "if any of said officers shall refuse or neglect to perform the duties required of them as aforesaid, they shall be jointly and severally liable for all the debts of the company contracted after the expiration of said ten days and before the certificate shall be recorded as aforesaid." After full consideration it was decided, (Durfee, J., giving the opinion,) that the liability alleged, as founded upon the statute referred to, did not give a cause of action which survived the person affected by the liability or which constituted at law a valid claim against his estate. This statute is so similar to our own that it is impossible to make any distinction in principle between the third count in that case and the present action.

Under a statute of the state of New York, providing that "on failure of any company within twenty days from the first of January to make, publish and file an annual report, all the trustees of the company shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such report shall be made," it has been held repeatedly that the act was penal and could not be extended by construction to cases not fairly within its language. *Garrison* v. *Howe*, 17 N. York, 458; *Boughton* v. *Otis*, 21 N. York, 261; *Chambers* v. *Lewis*, 28 N. York, 454. In *Shaler & Hall Quarry Co.* v. *Bliss*, 34 Barb., 309, it was held that the liability of the trustees under the statute referred to was of the nature of a penalty or punishment for the omission of a duty. In *Bank of California* v. *Collins*, 5 Hun, 209, the trustees of the La Abra Silver Mining Company (a corporation) failed to publish an annual report as required, and suit was brought against them on the statute; one of the defendants died pending the action, and the question raised was whether it could be revived against his estate. And although the statutes of New York at the time provided for the survivorship of all actions for wrongs done to the property, rights or interests of another person, (except slander, libel, assault and battery, and false imprisonment, and actions on the case for injuries to the person of the plaintiff or to the person of a testator or intestate,) yet it was held that, as the action depended entirely upon the omission to file the annual report, the act had no relation to any right, property or interest of the plaintiff, and was not a wrong done to his property, but was only an act invoking a penalty for a violation of a duty to the public and not to any private person, and that it could not be revived against the estate of the deceased trustee.

In *Reynolds* v. *Mason*, 54 How. Pr. R., 213, the defendant was a trustee of the Mason Manufacturing Company, and had neglected to file annual reports, and an action was brought on the statute, 3 Edm. R. S., 733, sec. 12. The plaintiff died, and the administrator petitioned the court for leave to continue the suit in his name, but it was held to be a personal action to enforce a penalty, that did not survive.

In *Halsey* v. *McLean*, 12 Allen, 438, a creditor of a New York corporation brought a suit in Massachusetts against a trustee residing there, founded on the New York statute referred to. It was held that the suit could not be sustained because the statute was penal and had no extra-territorial operation.

In *Breitung* v. *Lindauer*, 37 Mich., 217, a statute provided that if the directors of certain corporations intentionally neglected to make certain annual reports of the condition of such corporations they should be liable for all the debts of the corporation contracted during the period of neglect, and the court held that the liability imposed was in the nature of a penalty, and could not be enforced after the repeal of the clause imposing it, even if incurred before.

Under a similar statute of Indiana the court in *Union Iron Co.* v. *Pierce*, 4 Biss., 327, came to the same conclusion, and held that a repeal of the statute after the commencement of a suit for a debt so contracted defeated the action.

In *Sturges et al.* v. *Burton et al.*, 8 Ohio St. R., 215, the directors of the Sandusky Bank were made by the charter personally liable to the creditors if the debts of the bank exceeded twice the capital paid in, and it was held to be a penalty to vindicate a violation of law.

In *Lawler et al.* v. *Burt*, 7 Ohio St. R., 340, an act prohibiting certain associations from issuing bank paper, and making the stockholders liable in their individual capacity for the whole amount of the paper so issued, was held to be a liability in tort in the nature of a penalty and not a liability in contract.

In *Irvine* v. *McKeon*, 23 Cal., 472, an act making the directors of a corporation liable for the excess of debts over the amount of capital stock paid in, was held to create a forfeiture or impose a penalty, and therefore to be strictly construed.

There is no error in the judgment complained of.

In this opinion the other judges concurred.