Globe Publishing Co. v. State Bank of Nebraska.

GLOBE PUBLISHING COMPANY ET AL. V. STATE BANK
OF NEBRASKA AT CRETE ET AL.

FILED JUNE 6, 1894.    No. 5538.

1. **Abatement:** REPEAL OF STATUTES. A suit pending to enforce a right or remedy conferred solely by statute is abated by the unconditional repeal of such statute before judgment rendered in such suit. *Bennet v. Hargus,* 1 Neb., 419, followed and reaffirmed.

2. **A penal statute** is an act by which a forfeiture is imposed for transgressing the provisions of the act. It may also be remedial in one part and penal in another. The effect and not the form of the statute is to be considered, and if its object is clearly to inflict a punishment on a party for doing what is prohibited or failing to do what is commanded to be done, it is penal in its character. *Diversey v. Smith,* 103 Ill., 378, followed.

3. **Corporations:** LIABILITY OF STOCKHOLDERS: STATUTES. When a law prescribes what the liability of a stockholder in a corporation to the creditors thereof shall be, as that the shareholder shall be liable for double the amount of his stock, or for a sum equal to the amount of his stock, or for the amount remaining unpaid on his stock subscription, such law is one prescribing the liability of a stockholder in a corporation *de jure,* as, without an express statute, a stockholder in such a corporation would not be liable for any debt of the corporation whatever.

4. ———: ———: ———. When such a statute so prescribes and fixes the amount for which a stockholder in a corporation shall be liable, it is intended to be a limitation upon the stockholder's exemption from liability for the debts of the corporation which but for the law he would enjoy.

5. ———: ———: ———. When such a statute is in force and persons organize themselves into a *de jure* corporation, such statute is incorporated into and becomes a part of the charter of such corporation, and the stockholders thereof impliedly assent and agree that their liability for the debts of the corporation shall be as fixed by such law.

6. ———: ———: ———. Such a statute and the rights of creditors acquired thereunder are contractual in their nature.

7. ———: ———: ———. Where a statute provides that until cer-

tain things are done by persons forming a corporation, such as the filing of its articles of incorporation in the office of a public officer, the stockholders of such corporation shall be liable for the debts thereof, such a statute is declaratory of the common law.

8. ————: ————: ————. Until the requirements of such a statute have been complied with, a *de jure* corporation does not exist, and the stockholders thereof are jointly and severally liable for the debts contracted by such voluntary unincorporated association of persons; and such a statute and the rights of creditors acquired thereunder are contractual in their nature.

9. ————: ————: ————. Where a law commands corporations to do certain acts, as to publish annually a notice of their indebtedness, such a law is addressed to the stockholders of the corporations *de jure;* and when such statute declares that all the stockholders thereof shall be liable for the debts of the corporation in case it fails to comply with the requirements of the statute, then the law is designed as a punishment of the stockholders for a violation of the law and is penal.

10. ————: ————: ————. *Abbott v. Omaha Smelting & Refining Co.,* 4 Neb., 416, and *White v. Blum,* 4 Neb., 555, reaffirmed. *Howell v. Roberts,* 29 Neb., 483, and *Coy v. Jones,* 30 Neb., 798, overruled.

11. ————: ————. Where persons attempt in good faith to incorporate themselves into a valid corporation, and such a corporation actually enters upon the discharge of corporate functions and so continues for a considerable time unchallenged by the state, persons who contract with such a corporation cannot hold the stockholders thereof liable on such contract because it transpires that by some mistake or oversight the corporation had never become a technical *de jure* corporation.

12. **Statutes.** Section 136 of chapter 11, General Statutes, 1873, repealed by an act approved April 6, 1891, was penal.

13. **Corporations:** CONSTITUTIONAL LAW. The word "ascertained," in section 4, article 11, of the constitution, means "judicially ascertained;" and to "judicially ascertain" the amount due from a corporation to a creditor thereof means to have the finding and judgment or decree of a court as to such amount.

14. ————: LIABILITY OF STOCKHOLDERS TO CREDITORS. The creditors of a *de jure* corporation have no right of action against the stockholders thereof until they have reduced their claims against the corporation to judgment, and until execution issued upon such judgment has been returned, wholly or in part, unsatisfied.

15. ———: ———. Such a creditor's cause of action does not accrue until the return unsatisfied in whole or in part of an execution issued on a judgment rendered in his favor against the corporation for the corporate debt.

ERROR from the district court of Saline county. Tried below before HASTINGS, J.

The facts are stated in the opinion.

*Robert Ryan*, for plaintiffs in error, contending that the provisions of the statute upon which the action is founded are penal and that the repeal of the statute abates the action, cited: Compiled Statutes, 1889, sec. 136, ch. 16; Session Laws, 1891, ch. 13; *Bennet v. Hargus*, 1 Neb., 419; *Butler v. Palmer*, 1 Hill [N. Y.], 325; *People v. Livingston*, 6 Wend. [N. Y.], 526; *Dash v. Van Kleeck*, 7 Johns. [N. Y.], 477; *Macnawhoc Plantation v. Thompson*, 36 Me., 365; *Johnson v. Hahn*, 4 Neb., 146; *Key v. Goodwin*, 4 M. & P. [Eng.], 341; *Willliams v. County Commissioners*, 35 Me., 348; *Underwood v. McDuffee*, 15 Mich., 367; *Sturtess v. Ellison*, 4 M. & S. [Eng.], 586; *Yeaton v. United States*, 5 Cranch [U. S.], 281; *Rachel v. United States*, 6 Cranch [U. S.], 329; *United States v. Passmore*, 4 Dal. [U. S.], 372; *Commonwealth v. Kimball*, 21 Pick. [Mass.], 375; *Stoever v. Immell*, 1 Watts [Pa.], 558; *Wiles v. Suydam*, 64 N. Y., 173; *Flash v. Conn*, 109 U. S., 371; *Chase v. Curtis*, 113 U. S., 458; *Steam Engine Co. v. Hubbard*, 101 U. S., 188; *Halsey v. McLean*, 12 Allen [Mass.], 438; *Derrickson v. Smith*, 3 Dutch. [N. J.], 166; *Sturges v. Burton*, 8 O. St., 215; *First Nat. Bank of Plymouth, Pennsylvania, v. Price*, 33 Md., 487; *Irvine v. McKeon*, 23 Cal., 472; *Bird v. Hayden*, 1 Robt. [N. Y.], 383; *Moies v. Sprague*, 9 R. I., 541; *Veeder v. Baker*, 83 N. Y., 156; *Gadsden v. Woodward*, 103 N. Y., 242; *Cady v. Smith*, 12 Neb., 630; *Hanson v. Donkersley*, 37 Mich., 184.

16

The amount of the claim justly due from the Globe Publishing Company should have been ascertained by a judgment and the corporate property exhausted before proceedings were instituted against the stockholders. (Constitution, sec. 4, art. 11; *State v. Boyd,* 31 Neb., 734; *Weil v. Lankins,* 3 Neb., 384; *Wineland v. Cochran,* 9 Neb., 480; *Crowell v. Horacek,* 12 Neb., 622; *Brooks v. Stone,* 19 How. Pr. [N. Y.], 395; *Baines v. Babcock,* 27 Pac. Rep. [Cal.], 674; *Baines v. Story,* 27 Pac. Rep. [Cal.], 676; *Potter v. Dear,* 27 Pac. Rep. [Cal.], 676; *Cambridge Water-Works v. Somerville Dying & Bleaching Co.,* 4 Allen [Mass.], 243; *Holyoke Bank v. Goodman Paper Mfg. Co.,* 9 Cush. [Mass.], 576.)

*James W. Dawes* and *Abbott & Abbott,* also for plaintiffs in error.

*Chas. Offutt* and *Charles S. Lobingier, contra:*

Section 136 of chapter 16, Compiled Statutes of 1889, was not remedial. (Sutherland, Statutory Construction [ed. 1891], sec. 207.)

Section 136 did not provide for the recovery of a penalty. (Anderson's Dictionary of Law; Sutherland, Statutory Construction, sec. 208; *Howell v. Roberts,* 29 Neb., 483; *Coy v. Jones,* 30 Neb., 798.)

Section 136 is a part of the charter of the Globe Publishing Company. (*Abbott v. Omaha Smelting Co.,* 4 Neb., 416; *Smith v. Steele,* 8 Neb., 115; 1 Morawetz, Private Corporations [2d ed.], sec. 318; *Dartmouth College v. Woodward,* 4 Wheat. [U. S.], 518.)

Section 136 is a part of the contract by virtue of which persons were permitted to do business as a corporation; compliance therewith was the condition on which the shareholders escape personal liability. (*Doolittle v. Marsh,* 11 Neb., 244.)

The repealing act could not affect the rights of creditors

which had attached before the repeal.    The state and federal constitutions forbid the enactment of any law "impairing the obligation of contracts." (*Howell v. Roberts,* 29 Neb., 483 ; *Coy v. Jones,* 30 Neb., 798 ; *Porter v. Sherman County Banking Co.,* 36 Neb., 271 ; *State v. Cathers,* 25 Neb., 250; 2 Morawetz, Corporations, sec. 872; Cook, Stock & Stockholders [2d ed.], 515 ; *Hawthorne v. Calef,* 2 Wall. [U. S.], 10 ; *McDonnell v. Alabama Gold Life Ins. Co.,* 85 Ala., 401 ; *Corning v. McCullough,* 49 Am. Dec. [N. Y.], 308 ; *Hodgson v. Cheever,* 8 Mo. App., 321 ; *Lowry v. Inman,* 46 N. Y., 119; *Central Agricultural & Mechanical Association v. Alabama Gold Life Ins. Co.,* 70 Ala., 120; *Edwards v. Williamson,* 70 Ala., 145; *Aultman's Appeal,* 98 Pa. St., 505.)

The citations relied on by the plaintiffs in error are not in point, because they all construe penal statutes, and counsel does not distinguish between a liability imposed upon officers or trustees, and upon the entire body of the shareholders.    This distinction should be made. (*Thompson v. Reno Savings Bank,* 3 Am. St. Rep. [Nev.], 846, note; *Flash v. Conn,* 109 U. S., 371 ; *Chase v. Curtis,* 113 U. S., 452.)

Since the corporation was insolvent, the action was properly brought against it and the stockholders simultaneously. (*Smith v. Steele,* 8 Neb., 115; *Howell v. Roberts,* 29 Neb., 483; *Abbott v. Omaha Smelting Co.,* 4 Neb., 416; *White v. Blum,* 4 Neb., 555; Cook, Stockholders [2d ed.], 219; *Morgan v. Lewis,* 17 N. E. Rep. [O.], 558; *Sleeper v. Goodwin,* 67 Wis., 585 ; *Richards v. Beach,* 5 N. Y. Sup., 574; *Walton v. Coe,* 110 N. Y., 109; *Shellington v. Howland,* 53 N. Y., 371 ; *Kincaid v. Dwinelle,* 59 N. Y., 548 ; *Flash v. Conn,* 109 U. S., 371 ; *Munger v. Jacobson,* 99 Ill., 349 ; *Toucey v. Bowen,* 1 Biss. [U. S.], 81; *Marion Township Union Draining Co. v. Norris,* 37 Ind., 424; *Shafer v. Moriarty,* 46 Ind., 9.)

RAGAN, C.

The State Bank of Nebraska at Crete, Nebraska, sued the Globe Publishing Company and the stockholders thereof in the district court of Saline county to recover the amount of a promissory note owing by said Globe Publishing Company to the said State Bank. Both the bank and the Globe Publishing Company were domestic corporations, having their principal places of business in said Saline county. The bank had judgment, and the Globe Publishing Company and all stockholders, except two, bring the case here for review.

The liability of the stockholders of the publishing company for the debt due from it to the bank was based on the failure of the publishing company to publish an annual notice of its existing debts, as provided by section 136, chapter 11, General Statutes, 1873, in force at the time the debt sued for here was contracted. That section is as follows: "Every corporation hereafter created shall give notice annually in some newspaper printed in the county or counties in which the business is transacted, and in case there is no newspaper printed therein, then in the nearest paper in the state, of the amount of all the existing debts of the corporation, which notice shall be signed by the president and a majority of the directors; and, if any corporation shall fail to do so, all the stockholders of the corporation shall be jointly and severally liable for all debts of the corporation then existing, and for all that shall be contracted before such notice is given." After this suit was brought, but before judgment was rendered therein, the legislature repealed this section 136 without a saving clause. The argument of counsel for plaintiffs in error now is that the repeal of said section abated this action. Whether this is true depends upon the nature of the statute repealed. If it was a statute contractual in its nature; if the right of action acquired by the bank against the stock-

holders of the publishing company by virtue of said statute, and the corporation's violation thereof, was a vested right, then the repeal of the statute could not and did not take it away; but if the statute repealed was penal in its nature, then its repeal abated the action.

1. A suit pending to enforce a right or remedy conferred solely by statute is abated by the unconditional repeal of such statute, before judgment rendered in such suit. (*Bennet v. Hargus*, 1 Neb., 419; *Knox v. Baldwin*, 80 N. Y., 610; *Victory Webb Printing & Folding Machine Mfg. Co. v. Beecher*, 97 N. Y., 651; *Gregory v. German Bank of Denver*, 3 Col., 332; *Breitung v. Lindauer*, 37 Mich., 217; *Yeaton v. United States*, 5 Cranch [U. S.], 281; *Norris v. Crocker*, 13 How. [U. S.], 429.)

2. Was this a penal statute? This question must be answered by the authorities. In 1848 the legislature of New York enacted a statute governing manufacturing corporations (ch. 40). Section 12 of that act was as follows: "Every such company shall annually, within twenty days from the first day of January, make a report, which shall be published in some newspaper published in the town, city, or village, or if there be no newspaper published in said town, city, or village, then in some newspaper published nearest the place where the business of said company is carried on, which shall state the amount of capital and of the portion actually paid in and the amount of its existing debts, which report shall be signed by the president and a majority of the trustees and shall be verified by the oath of the president or secretary of said company and filed in the office of the clerk of the county where the business of the company shall be carried on; and if any of said company shall fail so to do, all the trustees of the company shall be jointly and severally liable for all the debts of the company then existing and for all that shall be contracted before such report shall be made." A New York corporation organized under this law failed

to give the annual notice of its indebtedness as provided by said section 12, and during such default became indebted to a bank. The bank then sued the trustees of the corporation for the amount of the debt. The court of appeals of New York in *Merchants Bank of New Haven v. Bliss*, 35 N. Y., 412, discussing said section 12 and another section, said: "The liability (of the trustees under said section 12), it must be observed, is not limited to the injury or damage sustained by the creditors in consequence of the violation, but upon failure to file the report, * * * the trustees are subjected to the payment of the whole amount of the debts of the company then existing and for all that shall be contracted. * * * These provisions appear to be severally punitive, inflicted on grounds of public policy for the protection of creditors and the prevention of frauds upon the public in respect to the financial condition of such corporations. It is clear that the liability of the trustees is not imposed as an indemnity, because it has no relation to the actual loss or injury sustained by the party in whose favor the action is given. The action depends wholly upon the statute. There never was any such remedy or cause of action in whole or in part at common law. If any action could have been maintained at common law for either of the causes mentioned in sections 12 and 13 of the general act in relation to manufacturing corporations, it could extend only to the actual damages or injury sustained. But those elements have nothing to do with the actions given by these sections, nor, indeed, is it necessary that the creditor should have sustained any injury or damage by reason of a violation of those sections. It is sufficient that the party prosecuting the action should be a creditor when the violation of the law takes place. The right of action is given to the creditors and they must be held to be the parties aggrieved. For these reasons I am satisfied that the sections 12 and 13 impose a penalty," etc. The question of the nature of this section 12 arose

again and was discussed and decided by the court of appeals of New York in *Miller v. White*, 50 N. Y., 137, and the court said : "It will be perceived that this is a highly penal act, extremely rigorous in its provisions." In *Wiles v. Suydam*, 64 N. Y., 173, the statute was again before the New York court of appeals.   In that case the Imperishable Stone Block Pavement Company, a domestic corporation, became indebted to Wiles and others.   Suydam was a stockholder in the corporation and indebted to it on his stock subscriptions.   He was also a trustee of the corporation.   The suit was brought by Wiles and others against Suydam to recover the amount of the debt owing them by the pavement company; and Wiles set out in his petition against Suydam two causes of action, viz., his indebtedness on his stock subscription to the Stone Pavement Company, and the failure of that corporation to publish annually the statement of its existing debts.   The court held that the indebtedness of Suydam on his unpaid subscription constituted one cause of action against Suydam, and in discussing the other right of action of Wiles against Suydam originating by the failure of the corporation to publish its annual statement said : "The allegations against the defendant as trustee also constitute a distinct and perfect cause of action.   *   *   *   Here the liability is created by statute, and is in the nature of a penalty imposed for neglect of duty in not filing a report showing the situation of the company."   The nature of this section 12 has been before the New York court of appeals and the construction placed upon said section in the leading case, *Merchants Bank of New Haven v. Bliss*, 35 N. Y., 412, and reaffirmed in the following cases: *Easterly v. Barber*, 65 N. Y., 252; *Knox v. Baldwin*, 80 N. Y., 610; *Veeder v. Baker*, 83 N. Y., 156; *Pier v. Nanmore*, 86 N. Y., 95; *Stokes v. Stickney*, 96 N. Y., 323; *Victory Webb Printing & Folding Machine Mfg. Co. v. Beecher*, 97 N. Y., 651.   And in *Gadsden v. Woodward*, 103 N. Y., 242, the nature of said section

12 was again before the New York court of appeals, and the court said : " This action is brought against the defendant to recover a debt due by a manufacturing corporation of which he was a trustee, and he is sought to be made liable therefor on the ground that he failed to make the annual report required by the general manufacturing law. The action is not to recover a debt which he owes, but to impose upon him, as a penalty for his default, the payment of the debt of the corporation.  We have repeatedly held that such an action is an action for a penalty or forfeiture. *. * * The liability sought to be enforced against the defendant does not arise out of any contract obligation, but is imposed by the statute as a penalty for disobedience of its requirement." This section 12 of the New York law was construed by the supreme court of the United States in *Chase v. Curtis,* 113 U. S., 452, the court saying of said section 12: " But, as we have already seen, the statute involved in this discussion is not a remedial statute to be broadly and liberally construed, but is a penal statute, with provisions of a highly rigorous nature, to be construed most favorably for those sought to be charged under it, and with strictness against their alleged liability."

Section 15 of chapter 18 of the Revised Statutes of 1868 of the state of Colorado is a copy of section 12 of the New York act.  The nature of this section 15 of the Colorado act was before the supreme court of that state in *Gregory v. German Bank of Denver,* 3 Col., 332, and of that statute that court said : " This statute is in its nature penal.  It prescribes a determinate penalty for neglect of a duty imposed by law upon the trustees of companies organized under our general incorporation act.  The amount of the forfeiture is measured by the aggregate debt contracted by the company.  The liability is not founded upon contract, but arises from misconduct in office." This case was reaffirmed by the supreme court of Colorado in *Larsen v. James,* 29 Pac. Rep. [Col.], 183.  A statute of Michigan required annual reports of cer-

tain corporations to be filed, and provided that if the directors neglected to file such report they should be liable for all the debts of the corporation contracted during the period of such neglect. Construing that statute the supreme court of that state held that the liability imposed was in the nature of a penalty and conferred no contract obligation upon which creditors could rely.

A statute of Connecticut provided that in the case of every corporation, certificates showing their condition should be filed annually by the president and secretary with the town clerk, and that in case of neglect those officers should be liable for all the debts of the corporation contracted during the period of such neglect. The supreme court of that state, construing this statute in *Mitchell v. Hotchkiss*, 48 Conn., 9, said: "We do not see how it is possible to construe this statute as creating, or attempting to create, any contract relation or duty between the creditors of a corporation and its president. The adoption of such a construction would suggest grave doubts as to the validity of the act which should attempt so arbitrarily to make a debtor out of a stranger to the debt, or, in other words, to make the debt of one person the debt of another. There was no privy between Hotchkiss and the plaintiffs. They had no transaction with each other, and the former owed the latter no private duty from which a promise might be implied." This Connecticut statute came before the supreme court of the United States, and its nature was construed by that court in *Steam Engine Co. v. Hubbard*, 101 U. S., 188, and that court held that the Connecticut statute was penal and must be strictly construed.

The supreme court of Illinois in *Diversey v. Smith*, 103 Ill., 378, defines a penal statute thus: "A penal statute is an act by which a forfeiture is imposed for transgressing the provisions of the act. It may also be remedial in one part and penal in another. The effect and not the form of the statute is to be considered, and if its object is clearly

to inflict a punishment on a party for doing what is pro-hibited or failing to do what is commanded to be done, it is penal in its character."

Cook, Stock & Stockholders [2d ed.], sec. 223, in discus-sing the enforcement of the statutory liability of stock-holders in the courts of a state other than the one in which said corporation was created, uses this language: "In gen-eral, when the courts of one state are asked to enforce the statutory liability of stockholders in a corporation created by another state, two things are to be considered: First —Is the statutory liability itself a contract liability or a mere penalty?  *  *  *  The law is clear that the courts of one state will not enforce penalties imposed by an-other state.  But the usual statutory liability of stockhold-ers is not a penalty.  *  *  *  The ordinary statutory liability of stockholders is a contract liability and will be enforced as such by the courts of all the states.  A differ-ent rule prevails as to the statutory liability of corporate officers for failure to file reports or give certain notices or make certain contracts.  Such liability is generally con-strued to be penal, and will not be enforced by the courts of other states."

The section of the Nebraska statute under consideration is almost a literal copy of the eighteenth section of the first article of the corporation act of the state of Missouri, approved March 19, 1845, the section of the Missouri law being in the following words: "Every corporation here-after created shall give notice annually in some newspaper printed in the county where the corporation is established, and in case no paper is printed therein, then in the nearest paper, the amount of all the existing debts of the cor-poration, which notice shall be signed by the president and a majority of the directors; and if any of the said corpora-tions shall fail so to do, all the stockholders of the cor-poration shall be jointly and severally liable for all the debts of the company then existing, and for all that shall

be contracted before such notice shall be given." A corporation of that state having failed to publish an annual notice of its existing debts, and during such default having become indebted, an action was brought against all the stockholders of the corporation for the debt so contracted, on the ground of the default in publishing the annual notice required by the section just quoted. The right of the creditor to maintain the action against the stockholders depended upon whether the statute was in its nature penal, and the supreme court of the state of Missouri in *Cable v. McCune*, 26 Mo., 371, decided that the statute in question was a penal one. The court said: "Our opinion in this case is based entirely upon the penal character of the statute we are called upon to construe. The corporation is required to publish an annual statement of their condition for the information of the public, and the failure to do so renders the stockholders responsible for a specified class of demands existing prior to or at the time of such publication. * * * This liability, in the event of there being no required publication, does not depend upon the actual injury which the failure to publish may have occasioned in a given case, but is absolute, dependent only on the proof of publication or no publication. Such a statute can be regarded in no other light than a penal one."

Thus far we have been reviewing authorities which show that the Nebraska statute under consideration, and statutes like it, is a penal one. We now direct our attention to the argument of counsel for the defendant in error, and the authorities cited by them, that section 136 of the Nebraska statute is in its nature contractual. In other words, that the right of action given thereby to the creditors of a corporation against its stockholders for the failure of the corporation to publish the annual statement of its indebtedness is a right of action arising by contract and therefore a vested right and one that the legislature could not take away by repealing the statute. It is contended that as sec-

tion 136 was in force at the time of the organization of
the Globe Publishing Company it became a part of its
charter, and that the stockholders thereof, by virtue of such
statute and the organization of such corporation while it
was in force, impliedly contracted and promised that in
case the corporation failed to publish its annual state-
ment, they, the stockholders, would pay all the debts that
the corporation contracted during the period of such de-
fault. But counsel lose sight of the distinction between
the liability of a member of a voluntary unincorporated
association for the debts thereof as it existed at common
law and as fixed by statutes declaratory thereof, and the
statutory liability of a stockholder of a corporation *de jure*.
When the law prescribes what the liability of a shareholder
shall be, for instance, that such shareholder shall be liable
to the creditors of the corporation for double the amount
of his stock, or for a sum equal to the amount of his stock,
or for the amount remaining unpaid on his subscription to
the stock of such company, the law is then speaking of and
fixing the liability of a stockholder in a corporation *de jure*,
as, without an express statute, a stockholder in such a corpo-
ration would not be liable for any debt whatsoever of such
corporation; and when a statute so prescribes and fixes the
amount for which the stockholders in a corporation shall
be liable, such a law is intended to be a limitation upon
the stockholder's exemption from liability for the debts of
the corporation which he would otherwise enjoy; and per-
sons who organize themselves into a *de jure* corporation,
when such a statute is in force, incorporate it into, and it
becomes a part of, their charter, and they impliedly agree
and assent that their liability for the debts of the corpora-
tion shall be as fixed by such a law. Where a statute
provides that until certain things are done by persons
forming a corporation, such as the filing of its articles of
association in the office of a public officer, the stockholders
in such corporation shall be liable for the debts thereof,

such a statute is only declaratory of the common law. Until the requirements of the statute have been complied with, a *de jure* corporation would not exist, and the parties thereof would be jointly and severally liable for all the debts contracted by such voluntary unincorporated association of persons. At least, since the time our Norse ancestors settled on the shores of the Baltic sea, it has been the law that where two or more persons engaged in a common enterprise, each one was liable for the act of the others and for the debts incurred by the others in aid of the common object for which the association was formed or the enterprise undertaken. It is evident that the statute, which makes all the stockholders of a corporation liable for the debts thereof until the requirements of the statute have been complied with necessary to make such a corporation one *de jure*, cannot be considered a penal statute, as such statute adds nothing to the liability of such parties, nor takes away any right which a creditor of such parties might have had; but where the law commands corporations to do certain acts, as to publish annually a notice of their indebtedness, such a law is addressing itself, not to *de facto* corporations or copartnerships or unincorporated associations, but to corporations *de jure* and the stockholders of such corporations; and when such a statute declares that all the stockholders of such a corporation shall be liable for all the debts of the corporation, if it fails to comply with the requirements of the statute, then such a law is designed as a punishment of the stockholders, and is penal.

Among the authorities relied upon by the eminent counsel for the defendant in error to sustain their argument that the section of the Nebraska statute under consideration was contractual in its nature is the case of *Hawthorn v. Calef*, 2 Wall. [U. S.], 10. An examination of that case, however, discloses that it does not by any means sustain the contention of counsel. A statute of Maine passed in 1836 provided that the shares of the individual stockholders of a

corporation should be liable for the debts of the corpo-
ration, and in case of deficiency of attachable corporate
property or estate, the individual property rights and cred-
its of the stockholder should be liable for the corporation's
debts to the amount of the stockholder's stock.   A corpo-
ration organized under this law became indebted, and soon
after the debt was contracted the legislature of the state
repealed the law making the stockholder of a corporation
individually liable to a creditor thereof.   The creditor,
however, sued the stockholder, alleging that the statute
referred to was contractual in its nature; that the right of
action he had acquired against the stockholder was a vested
right, and that it was not within the power of the legislature
of Maine to take that right away by repealing the statute.
This contention the supreme court of the United States
sustained in the case just cited.   Another case relied on by
counsel to support this argument is *Flash v. Conn*, 109 U. S.,
371.   The tenth section of the corporation law of the state
of New York provided that all the stockholders of every
company incorporated under the act should be severally and
individually liable to the creditors of the corporation to an
amount equal to the amount of stock held by them in such
corporation.   A corporation having become indebted, the
creditors sued its stockholders for the debt under the section
just quoted, and the supreme court of the United States,
in construing said section 10, held that the liability created
thereby was contractual in its nature.   With the doctrine
announced by the two cases last cited we entirely agree.
The statute of the state of Maine which fixed the liability
of a stockholder of a corporation for the debts thereof at
the amount of the stock held by him in such corporation
was contractual, and whoever became a stockholder in a
corporation while that law was in force impliedly assented
and agreed that he would be liable for the debts of the cor-
poration to an amount equal to the stock held by him therein.
It was a fixed, ascertained, and determined liability at the

time he became a member of the corporation. It was a
law addressing itself to stockholders of *de jure* corporations;
and a law of limitation upon the exemptions that such
stockholders would have otherwise enjoyed but for such
statute; and the same may be said of section 10 of the
New York law construed by the supreme court in *Flash v.
Conn.* But it is said that this court is committed to the
doctrine of the contractual nature of the statute under con-
sideration; and to sustain this contention we are cited to
*Abbott v. Omaha Smelting & Refining Co.*, 4 Neb., 416, and
*White v. Blum*, 4 Neb., 555; but these cases decide, and
decide only, that where persons have attempted to form a
corporation, until they shall have complied with the require-
ments of the statute for that purpose, are jointly and sever-
ally liable for the debts of such association. This conclu-
sion is right and we adhere to it; but the conclusion reached
in these cases resulted not alone from the statute, but could
and would have been the same had no statute on the subject
existed. Until the statute had been complied with the
Omaha Smelting Company and the Midland Pacific Rail-
road Company did not become corporations *de jure;* and
until they had become such corporations, the parties organiz-
ing them were simply members of voluntary unincorporated
associations, and as such were liable both at common law
and under the statute for the debts of such associations,
contracted by any member thereof within the scope of his
authority and for the purposes for which the associations
existed. But we do not mean by anything said here to
deny the correctness of the doctrine, expressed in many
cases, that where persons attempt in good faith to incorpo-
rate themselves into a valid corporation, and in such corpora-
tions named actually enter upon the discharge of corporate
functions, and so continue for a considerable time unchal-
lenged by the state, that persons who contract with such
corporation cannot hold the stockholders thereof liable on
such contract, because it transpires that, by some mistake

or oversight, the corporation had never become a technical *de jure* corporation. On the contrary, we approve of that rule.

·It is conceded by counsel for defendant in error that section 12 of the New York act construed in the cases cited above was and is penal, but it is said that, as that act made the trustees of the corporation liable for not publishing the notice of the corporation's existing debts, a distinction exists between the nature of that act and section 136 of the Nebraska act, wherein the liability is made to attach to all the stockholders of the corporation. We have reflected much upon this argument and confess our inability to comprehend the distinction which counsel would draw. We have been unable after a patient search to find any decided case or any text-writer supporting the counsel's argument. It may be that the directors of a corporation would be liable for fraud or deceit practiced by them in the name of the corporation upon another, and it may be that they would be liable for any damage which another should sustain in dealing with such corporation by the failure of such directors to comply with the law in force governing the corporation; but if such liability exists, it is not a statutory liability, but a common law liability; and in either of the cases supposed the liability of the directors would be measured by the damages sustained. If section 12 of the New York act is penal because it compels the directors to pay the debts of the corporation because they, its managing officers, did not comply with the requirements of the law, it would seem that a statute which makes all the stockholders of a corporation liable for the default of the corporation's directors would also be penal. If the section of the Nebraska statute under consideration is not a penal one, we are at a loss to know how the legislature could frame a penal statute. It certainly is not a statute of rewards. True, the punishment inflicted is pecuniary, but by the provisions of this statute a stockholder who owns $10 of stock in a corpora-.

tion may, under certain contingencies, be compelled to pay a debt of $10,000 that he did not owe, that he did not contract, and suffer that liability because of the default of another. True enough the object of the statute was to annually notify to the world the financial condition of the domestic corporations of the state, that parties having transactions with them might have a basis upon which to do their business safely; but this is not the only object of the statute. It is the exercise by the state of its police power. It is based upon principles of public policy, and it was intended as an incentive to stockholders of corporations to see to it that the law of the state was obeyed; and if they neglected their duty in that regard, to punish them for such neglect. We cannot recognize the argument that persons were induced to give the corporations of the state credit because of the existence of this section 136, for this would be to concede that the creditors parted with their property upon the understanding that when they did so that the officers of the corporation would violate the law which it was their duty to obey.

But, again, counsel for defendant in error say that the nature of the statute under consideration is no longer an open question in this court, as we have decided that the statute was not penal but contractual. In *Howell v. Roberts*, 29 Neb., 483, and again in *Coy v. Jones*, 30 Neb., 798, we did so decide. A somewhat extensive re-examination of the subject, however, constrains us to say that the conclusion reached by us in those cases was wrong and they must be overruled. We did say in those cases that said section 136 of the Nebraska statute was contractual in its nature. We were mistaken. The rule we announced in those cases is not supported by the weight of authority, nor indeed is it supported by any authority that we have been able to find. We conclude, therefore, that said section 136 was a penal statute, and that all rights of action which accrued thereunder to the creditors of a corporation against the

17

stockholders thereof and which had not been reduced to judgment were abrogated by the repeal of said section.

This suit was brought against the Globe Publishing Company and the stockholders thereof jointly. Was the action against the stockholders prematurely brought? We think it was. Cook, Stock & Stockholders, sec. 219, thus lays down the rule: "Even when not expressly provided by statute, it is the rule, according to the weight of authority, that corporate creditors, before they can proceed against the shareholders upon their statutory liability, must first exhaust their remedy against the corporation and its assets." We have no doubt but this is the general rule and the better practice, especially in the absence of a statute which authorizes a different procedure; but we are not concerned with what the rule may be in other states and courts. Section 4, article 11, of the constitution provides that "In all cases of claims against corporations and joint stock associations, the exact amount justly due shall be first ascertained, and after the corporate property shall have been exhausted, the original subscribers thereof shall be individually liable to the extent of their unpaid subscription, and the liability for the unpaid subscription shall follow the stock." The word "ascertained" in this provision we take to mean "judicially ascertained;" and to "judicially ascertain" the amount due from a corporation to a creditor means to have the finding and judgment or decree of a court as to such amount. Such an ascertainment of a debt due from a corporation could then be ascertained, and ascertained only, within the meaning of this constitution, in a suit brought by a creditor of a corporation against it; not against the stockholders thereof, nor against the stockholders and corporation jointly. The expression in the constitutional provision just quoted above, "that after the corporate property shall have been exhausted," means exhausted by judicial proceedings; that is, when executions issued on judgment or decrees rendered against corporations shall be returned

unsatisfied. This constitutional provision is the supreme law of the land, and we are not at liberty, nor desirous, of evading it or construing it away. We think, therefore, that the creditors of a *de jure* corporation have no right of action against the stockholders thereof until they have reduced their claims against the corporation to judgment, and until an execution issued upon such judgment has been returned wholly or in part unsatisfied. It follows from this that a creditor's cause of action against the stockholders of a corporation under said section 136 would not accrue until such creditor had sued the corporation for the corporate debt, obtained a judgment thereon, and an execution issued on such judgment had been returned, at least in part, unsatisfied. The judgment of the district court is affirmed as to the Globe Publishing Company and reversed as to all stockholders who prosecuted error, and the action as to them is dismissed.

JUDGMENT ACCORDINGLY.

NORVAL, C. J., concurs in the judgment solely on the ground last stated in the above opinion.

RYAN, C., having been of counsel, took no part in the decision.