(119 App. Div. 315)

DIETERICH v. FARGO.

(Supreme Court, Appellate Division, First Department. May 10, 1907.)

1. GAME—PROTECTION—POWER OF LEGISLATURE.
    The Legislature, for the purpose of protecting wild game, birds, and fish within the state, may prescribe the method by which such protection is to be accomplished, and for this purpose may prohibit the possession and sale in the state during the closed season of game killed and purchased in another state, as well as game killed within the state.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Game, §§ 2, 3.]

2. SAME—TRANSPORTATION OF VENISON.
    Forest, Fish, and Game Law, Laws 1900, p. 24, c. 20, § 8, as amended by Laws 1906, p. 1337, c. 478, provides that deer or venison killed in the state shall not be transported from or through any county, or possessed for that purpose, except that one carcass or part thereof may be transported from the county where killed, when accompanied by the owner, that no person shall transport more than two deer in any one year, and that deer killed within the state shall not be accepted by a common carrier for transportation from November 19th to September 30th, etc. Held, that such section applied to domesticated as well as wild deer, and prohibited an express company from transporting during the open season carcasses of deer which had been kept in a private preserve, when not accompanied by the owner.
    Lambert and McLaughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Suit by Charles F. Dieterich against James C. Fargo, as president of the American Express Company. From an interlocutory judgment sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

See 102 N. Y. Supp. 720.

Argued before PATTERSON, P. J., and McLAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

John A. Garver, for appellant.

Carter, Ledyard & Milburn, for respondent express company.

John K. Ward, for forest, fish, and game commission.

HOUGHTON, J. Plaintiff's complaint alleges that he maintains a private deer preserve in this state at Mill Brook, in Dutchess county, consisting of about 2,400 acres, securely fenced, within which he placed some years ago several "domesticated" deer purchased by him, without this state, and that they have rapidly increased in number, and to such an extent that, in order to preserve his herd, it is necessary for him to kill annually a considerable number of bucks, and that he desires to sell their carcasses to produce a revenue for maintaining such preserve, and that there is no proper means of transportation to the New York market, which is the principal one, except through the defendant express company, and that during the open season for the killing of wild deer he tendered to the defendant for such transportation several carcasses of such deer, which the defendant refused to receive and transport, on the ground that by so doing it might violate the provisions of the forest, fish, and game law of the state, and the relief asked is that the defendant may be enjoined from refusing to transport such carcasses upon tender of charges, provided the same shall be plainly marked as deer raised in confinement and killed in the plaintiff's private preserve.

The defendant demurred to the complaint, on the ground that it stated no cause of action, and such demurrer was sustained. No contention is made that such an action would not lie in any event, and the sole question presented is whether or not the receiving and transporting by defendant of more than one deer carcass, killed by plaintiff from his herd, unaccompanied by the owner, would be a violation of section 8 of the forest, fish, and game law. Laws 1900, p. 24, c. 20, as amended by Laws 1906, p. 1337, c. 478. We think it would, and that the demurrer was properly sustained. That section provides that deer or venison shall not be transported by a common carrier or possessed for that purpose, except during a prescribed open season, when one carcass or a part thereof may be transported from the county where killed, if accompanied by the owner. The term "wild" is not used in the section, and the plaintiff's contention is that such word should be implied, and that, when so read into the law, it does not apply to deer killed in his preserve, because they are "domesticated" and reared in captivity, and belong to himself to do with as he may choose. The contention of the defendant is that the Legislature had the right to prohibit or regulate the public transportation of the carcasses of all deer as a means of protection to wild deer, and for the purpose of restraining

their wholesale slaughter for the public markets. However honest and law-abiding the plaintiff may be, it is manifest that a construction as contended for by him would open the door to an easy evasion of the law which the Legislature has properly enacted to prevent the promiscuous killing of wild game. While the plaintiff's preserve is not situated in that portion of the state in which wild deer abound, in order to evade the law, it would be only necessary to establish a private preserve in the heart of the Adirondacks and kill wild deer promiscuously, and represent to the express company that they were killed in the preserve, and thus secure their transportation in quantity to the various markets. It is true that this could not be done without practicing a fraud upon the express companies; but it is fair to assume that the Legislature restricted the transportation of the carcasses of all deer, whether killed in captivity or killed in a wild state, for the express purpose of preventing such fraudulent imposition, to the end that no one might be exposed to the temptation of thus killing wild deer for market. That the Legislature, for the purpose of protecting wild game, birds, and fish within the state, has the right to establish the open seasons in which certain kinds may be taken, and to prescribe the manner and limit of such taking, as well as to prohibit other kinds from being taken at all, is unquestioned. The method which shall be employed to afford protection to wild game is necessarily within the discretion of the Legislature, and to that end it may prohibit the possession and sale in this state, during the close season, of game killed and purchased in another state (People v. Bootman, 180 N. Y. 1, 72 N. E. 505; People ex rel. Hill v. Hesterberg, 184 N. Y. 126, 76 N. E. 1032, 3 L. R. A. [N. S.] 163), or the sale at any time of game killed in this state as well as game killed in another state, except under certain prescribed conditions. Forest, Fish, and Game Law, Laws 1900, p. 27, c. 20, § 27, as amended by Laws 1905, p. 611, c. 335, § 43a, as amended by Laws 1906, p. 1458, c. 534, § 1; People v. Weinstock (App. Div.) 102 N. Y. Supp. 349; People v. Stillman (App. Div.) 102 N. Y. Supp. 351.

For the better protection of the game of this state, the Legislature has prescribed that it shall not be taken with intent to transport or be transported without the borders of the state (Forest, Fish, and Game Law, § 38, as amended by Laws 1904, p. 1406, c. 580, § 8); and that trout shall not be transported in this state except when accompanied by the actual owner (Id. § 60). These provisions, which cannot be deemed unreasonable, have as their object the better protection of the fish and game of the state. Confessedly, one of the best means of preventing the illegal taking of fish and game is to deprive the pot hunter and pot fisher of a ready market. If he has no market, the temptation to take illegally is largely removed. The most effective way of depriving him of a market is to deprive him of means of transportation. This the Legislature has attempted to do by prescribing that common carriers shall not accept for transportation carcasses of deer, except one, and that accompanied by the owner. In so doing, we are of opinion that the Legislature intended to prohibit the transportation of the carcasses of all deer, whether wild or "domesticated," even if such a term can be applied to such an animal, which

is very doubtful. In our view, it is no answer to say that the deer belong to the plaintiff, and are his absolute property. Grouse and woodcock killed in another state and purchased there by a resident of this state belong to the purchaser, and by the same reasoning he could possess them and sell them in this state, either during the open or the close season. This court has recently held that it was a violation of the game law to offer for sale in this state English pheasants hatched, reared, and killed in captivity in the state of New Jersey. People v. Waldorf-Astoria Hotel Company (App. Div., decided March, 1907) 103 N. Y. Supp. 434. The sale of such birds could not harm our own wild pheasants, except indirectly, in that it opened the door to fraudulent claims that birds actually killed in this state had been bred and killed in another. In the same way the permitting of the shipping of carcasses of deer except in the prescribed manner offers temptation to claim that deer killed in a wild state had been bred in captivity.

The complaint, in our opinion, asks that the defendant be compelled to do an illegal act, and hence it states no cause of action.

The interlocutory judgment should be affirmed, with costs, with leave to the plaintiff to amend, if he desires, on payment of costs in this court and in the court below.

PATTERSON, P. J., and SCOTT, J., concur.

LAMBERT, J. (dissenting). Section 8 of the forest, fish, and game law, the proper construction of which is to be determined on this appeal, provides as follows:

"Deer or venison killed in this state shall not be transported from or through any county, or possessed for that purpose, except as follows: One carcass or part thereof may be transported from the county where killed when accompanied by the owner. No person shall transport or accompany more than two deer in any one year under this section. Deer or venison killed in this state shall not be accepted by a common carrier for transportation from November 19th to September 30th, both inclusive, but if possession is obtained for transportation after September 30th and before midnight of November 18th it may be, when accompanied by the owner, lawfully remain in the possession of such common carrier the additional time necessary to deliver the same to its destination. Possession of deer or venison by a common carrier, or by any person in its employ while engaged in the business of such common carrier unaccompanied by the owner, shall constitute a violation of this section by such common carrier."

The plaintiff is the owner of a private park, and engaged in propagating deer, which he desires to sell in the market for profit. He seeks an injunction restraining the defendant from refusing to accept the deer or venison, urging that under a proper construction of the statute defendant is bound to afford him an opportunity of reaching the market with the product of his industry. At common law the plaintiff has a complete property right in the deer which he raises under the conditions set forth in the complaint, so long as he keeps them confined and subject to his dominion. 2 Blackstone's Com. 392, note 2. It is not to be doubted that it is the common-law duty of the defendant, as a common carrier; to afford means of transportation to the plaintiff for his property, unless relieved by the provisions of the forest, fish, and

104 N.Y.S.—22

game law cited. It seems to be clear that, if the language of section 8 is to be literally construed and full effect given to it, the demurrer was properly sustained; but, when reliance is placed upon a statute to relieve one from the duties and obligations imposed by the common law, it is the duty of the court, so far as possible, to avoid a construction which will injuriously affect rights and property. Suburban R. T. Co. v. Mayor, etc., 128 N. Y. 510, 28 N. E. 525. The rule is supported by authority that statutes changing the common law are to be strictly construed, and the letter will be held to be no further abrogated than the clear import of the language used in the statutes absolutely requires. People v. Palmer, 109 N. Y. 110, 16 N. E. 529, 4 Am. St. Rep. 423; Fitzgerald v. Quann, 109 N. Y. 441, 17 N. E. 354; Dean v. M. E. R. Co., 119 N. Y. 540, 23 N. E. 1054. A thing within the letter of the statute to avail must also be within the intention of the lawmakers. Riggs v. Palmer, 115 N. Y. 506, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819. And this involves the duty of consulting all of the provisions of the statute, as distinguished from a single section, to ascertain the legislative intent. People ex rel. Huntington v. Crennan, 141 N. Y. 239, 36 N. E. 187. The intent of the framers is to be sought (Matter of Street Opening, 133 N. Y. 329, 31 N. E. 102, 16 L. R. A. 180, 28 Am. St. Rep. 640), and that, while not of controlling authority, the title of the act may be resorted to for the purpose of showing what was in the minds of the Legislature (Ayers v. Lawrence, 59 N. Y. 192, 196, 197; People ex rel. West v. Davenport, 91 N. Y. 574–585). In the latter case it was added that:

"A principle of construction of universal authority is that which requires the court to limit and restrict the operation of a statute when its language, if ap plied in its literal sense, would lead to an absurdity, or manifest injustice."

Construing this statute in the light of these rules, we find that the title of the act is, "An act for the protection of the forests, fish, and game of the state." The statute makes no effort to define game, which has been defined as "birds and beasts of a wild nature, obtained by fowling and hunting" (14 Am. & Eng. Ency. of Law, 654), and this seems to be in harmony with the understanding of the lawmakers, for we find them making special provisions in reference to closed seasons for "wild deer," and for the possession of "wild deer or venison," in sections 2, 3, and 4 of the act, and in section 2 it is especially provided that the owner may "retake alive, deer which have escaped from his possession," recognizing thereby the right of ownership in domestic deer, as distinguished from wild or game deer which it was the purpose of the statute to protect. It was to protect, not tame deer belonging to individuals, but the "fish and game of the state," which is at large in the state, and which may be reduced to lawful possession by any individual having proper appliances and skill during the open season. The plaintiff in this action has the same natural and legal right to fence his farm and devote it to the propagation of deer, that he has to make use of it for the raising of sheep or cattle. He has a full property right in the deer which he keeps inclosed upon his premises, as well as in the meat product of his farm; and to deny him the right to transport his deer or venison under the same terms and conditions as would apply to the shipment of cattle or sheep, upon the hypothesis that this

is necessary to aid in detecting those engaged in illegally killing of game deer of the state, is an abuse of legislative power, which ought not to be permitted if it is possible to give any other construction to the language used. "When," to quote the language of Blackstone's Commentaries (volume 1, § 91), "in discussing statutes, some collateral matter arises out of the general words and happening to be unreasonable, then the judges are in decency to conclude that this consequence was not foreseen by the Parliament, and therefore they are at liberty to expound the statute by equity and only quoad hoc disregard it." It will be seen from an examination of the statute that section 8 (quoted) of the act is designed to aid in the enforcement of the other provisions. Section 2, for instance, provides that the closed season for wild deer shall be from November 15th to September 30th, both inclusive, and that no person shall take more than two deer in an open season. And, to prevent persons from gaining anything by killing more than the two deer permitted by statute, it is provided in section 8 that "one carcass or a part thereof may be transported from the county where killed when accompanied by the owner," and that "no person shall transport or accompany more than two deer in any year under this section." Obviously, the purpose of section 8 is to supplement the provisions of section 2, and the "deer" referred to in section 8 are the "wild deer" sought to be protected by the provisions of section 2. The scheme of the statute is plain. It limits the right of an individual to kill wild deer to a definite season, to a definite number of deer; and to aid in the enforcement of these limitations it provides that common carriers shall not afford transportation for those deer sought to be protected, except when accompanied by the owner, and it further provides that he must not accompany more than two deer during the season. Thus read and construed, the Legislature is within its legitimate sphere of protection of wild game. It has provided for the protection of the "game of the state," and it is justified in limiting the duties and obligations of common carriers to this extent. But to say that it is proper for the Legislature to take away all the duties of the common carrier, and to impose a penalty, as is done under the provisions of section 16, for performing a perfectly legitimate duty to the owner of deer who has raised them as a commercial venture, is going a step beyond what has heretofore been sanctioned by the courts, and it ought not to be done, unless this is made so clear that there is no mistaking the legislative intent. "In order to form a right judgment," says Bacon's Abridgment (Statutes 1–5), cited with approval in Riggs v. Palmer, supra, "it is a good way to suppose the lawmaker present, and that you have asked him this question: 'Did you intend to comprehend this case?' Then you must give yourself such an answer as you imagine he, being an upright and reasonable man, would have given. If this be that he did mean to comprehend it, you may safely hold the case to be within the equity of the statute; for, while you do no more than he would have done, you do not act contrary to the statute, but in conformity thereto." Tried by this test, can any one suppose the answer of the Legislature to be that it was intended to ruin the legitimate business of propagating deer for food? that the general words of the statute were intended to practically ruin the business

of raising deer for the market? The legitimate foundation for the exercise of the police power in the protection of game is that it conserves the food supply. We protect game birds, beasts, and fish upon the theory that these belong as a common right to the state, and it would be strange if the Legislature should, for the sake of fostering a common food supply, enact legislation to prevent private protection of a like supply, or what is equivalent to carrying on this industry at a profit upon the investment. This construction leads to an absurdity, and in such a case it is within the legitimate province of the court to interpret the language to "conform to the presumed intent of its framers." People ex rel. West v. Davenport, 91 N. Y. 574–585. The presumed intent of this legislation is to protect the "game of the state," and a reasonable regulation of the business of common carriers to make it difficult to evade the law, by limiting transportation facilities to wild deer or venison when accompanied by the owner, and restricting the number of deer which any individual is permitted to take, fully meets this requirement. The plaintiff, engaged in raising deer as a commercial venture, and as I view it, is not within the spirit of the statute. He can have no legitimate object in shipping deer for other people, which they have killed in violation of the law, and the law will not, I take it, presume anything against his honesty of purpose. The fact that he has a right to ship deer of his own raising does not give any right to one who has merely reduced to possession a species of property in which the state at large has a property right, and we are of the opinion that, where a legitimate shipment of domestic deer or venison is offered, it is not a violation of the provisions of the forest, fish, and game law for a common carrier to accept the same, upon the same terms and conditions that it would receive any other offered shipment of meat products raised for commercial purposes.

"Reason," says a maxim of the common law, "is the soul of law, and, when the reason of any particular law ceases, so does the law itself." Coke on Littleton, 70b; Broom's Legal Maxims (4th Am. Ed.) 133. The reason of this law is the protection of the "game of the state," and, as this is adequately provided for by limiting the shipping privileges of wild deer and the number which may be lawfully taken when accompanied by the owner, the law must end when this purpose has been accomplished, and the general words of the statute should not be construed to work a wrong to this plaintiff and others similarly situated, or to prevent the breeding of a valuable food animal as a commercial undertaking.

The argument that this restriction is necessary to make it more difficult to evade the law, upon the same principle that possession of certain game is penalized within this state, regardless of where it was killed or taken, as in People ex rel. Hill v. Hesterberg, 184 N. Y. 126, 76 N. E. 1032, 3 L. R. A. (N. S.) 163, is completely overcome by the fact that the provisions of section 8 do not pretend to relate to deer generally, but only to "deer or venison killed in this state." It deals only with animals killed within this state. Deer killed in any state bordering upon New York, or in Canada, may be taken and transported the same as calves or sheep might be carried. They are clearly not within the restrictions of the law, and if wild deer killed

in Vermont or in Canada may be transported within this state, without detriment to our own wild deer, why should it be necessary to restrict shipments from one who is legitimately engaged in the raising of deer as a food product? The reasoning of the court in support of the provisions of the game law under consideration in the case last above cited has no application to the provisions of section 8, for it would be just as easy to make a false or fraudulent statement as to the place of killing in reference to our wild deer as it would be in the case of domestic deer. The plaintiff could take his deer alive to Vermont and kill them, and then bring them into this state and ship them to any point, and there would be no question of his right under the statute, and it would hardly seem to be necessary to construe the statute with the result contended for by the respondent simply because the plaintiff's domestic deer are killed within this state. The fair intent of the statute is that deer killed within this state by means of fowling and hunting—killed in the chase—are to be thus limited in transportation privileges. The state has no control over the killing of the deer owned by the plaintiff and kept within his own preserves, and it has no legitimate right, in my opinion, to deny him the right to transportation, unless that is necessary to the preservation of some higher right of the public. None has been suggested. As we have seen, none of the reasons which make it proper to penalize the possession of game in this state, regardless of the place of killing, can have application in this case, for the reason that deer killed outside of the state may be transported without limitation, and this would interfere with the enforcement of the law quite as much as the transportation from the farm of one whose surroundings were known and who could have no legitimate object in covering up the misdeeds of others.

The interlocutory judgment appealed from should be reversed and the demurrer overruled, and the defendant permitted to answer within 20 days upon payment of costs.

McLAUGHLIN, J. (dissenting). I have no doubt the Legislature has the power to prohibit or regulate the transportation of the carcasses of deer, whether wild or domesticated, but the question here is: Has it attempted to exercise this power so far as domesticated deer are concerned? I do not think it has. If it be true, as contended by the respondent, that there cannot be an efficient enforcement of the statute relating to wild deer unless the one under consideration be held to relate also to domesticated deer, then the statute should be amended. It certainly does not justify the court in adopting a strained or forced construction for the purpose of accomplishing that object.

On the ground, therefore, that the Legislature in the enactment of the statute here under consideration did not intend that it should apply to domesticated deer, I concur with Mr. Justice LAMBERT.