### MICELI v. MORGANO.

### In re ERIE COUNTY CANNING CO., Inc.

District Court, W. D. New York. November 12, 1929.

Donald D. Case, of Buffalo, N. Y. (Stanley Ruthven, of Buffalo, N. Y., of counsel), for plaintiff.

Percy R. Smith, of Buffalo, N. Y., for defendant.

HAZEL, District Judge. This suit in equity was brought by the trustee in bankruptcy to recover from the defendant, a creditor of the bankrupt, the sum of $2,041.54, paid the defendant on an antecedent debt, it being claimed that at such time defendant had reasonable cause to believe a preference was effected, under section 60 of the Bankruptcy Act, and also, in a separate cause of action, that the amounts paid constituted transferences to defendant while the debtor was insolvent, or while insolvency was imminent, and with intent to prefer, in violation of section 15 of the Stock Corporation Law of New York. The payments were made within four months of filing the involuntary petition in bankruptcy, which was on November 29, 1927. It appears that the real estate, which was used by the bankrupt for canning purposes, had cost $24,000, the machinery and equipment $12,000, and that business operations began in June, 1927, ending about five months thereafter, when the involuntary petition was filed. The bankruptcy schedules state that the indebtednesses are about $60,000, while the assets, including canned goods in storage, were valued at $50,000. The personal property was sold under order of the bankruptcy court, while the real estate was sold, during the pendency of the proceeding, in a mortgage foreclosure action—the personal property realizing very little for the general creditors, approximately $1,700 after payment of liens.

The president of the bankrupt testified that he was doing business with 52 different farmers, all delivering berries and fruits from time to time at the cannery; that from the beginning of the business the farmers sought payments on deliveries; that payments were made as the goods were sold; that defendant was more insistent on payment of his claim than some others, and therefore was paid the amount now sought to be recovered. He deposed that, if he had not been pressed for payments and forced into bankruptcy, he would have been able to meet his obligations prior to bankruptcy, since the value of the canned goods on hand was sufficient to pay all merchandise creditors in full; that he did not consider the company insolvent, and there was no intention on his part to give defendant a preference over other creditors.

In July, shortly after the bankrupt began operating the business, its president asked the merchandise creditors to indorse a promissory note to enable raising money to make payments of their claims, but the creditors, after a conference, refused to do so on the ground that canned goods on hand were valued at $27,000, showing, as they believed, solvency, and that their claims would be paid when the canned goods were sold. It was testified that it was customary for farmers, selling berries to canneries, including defendant, to make deliveries during the canning season, and generally to receive payments thereafter. The fact that the bankrupt was insolvent, something that is sufficiently established by the trustee, and that the president was aware of it, is not of controlling importance, since, to warrant recovery under the Bankruptcy Act, it must be proven that the creditor had reasonable grounds to believe that insolvency existed and that a preference was effected.

Defendant claims that he did not realize that the company was in poor financial condition at the time he was paid, though he doubtless was aware that other creditors had not been paid, and also that a note made by the bankrupt had been protested for nonpayment. His reliance upon anticipated sales no doubt tended to allay any suspicions he may have entertained as to the bankrupt's impaired financial condition. The indebtednesses arising from the building of the cannery and the purchase of equipment were unknown to him. The secretary of the bankrupt, whose duty it was to buy berries in the field from the farmers, including defendant, repeatedly informed sellers that he was instructed by the president of the company to assure them that it was in good shape, and that every one would be paid in full directly after selling the canned goods on hand. That the bankrupt was unable to promptly meet its obligations as they matured, and lacked the capital to successfully continue the enterprise, is clearly evident. But the conditions and assurances to defendant and other creditors that the company was solvent were, I think, fairly sufficient reasons for failure on defendant's part to make further inquiries. In my opinion, defendant had no reasonable grounds for believing that insolvency was

imminent, since, as said in Brookhiem v. Greenbaum (D. C.) 225 F. 635, the mere inability to make payments on demand, while at the same time continuing the business, does not imply insolvency.

It has frequently been decided that mere suspicion is not enough to put a creditor on inquiry as to the financial condition of his debtor, and charge him, upon the payment of his account in the ordinary course of business, with reasonable cause to believe that a preference over other creditors was given him. That the bankrupt asked the creditors to indorse a note, so that he could raise money to pay them in advance of sales of the canned goods, or that a promissory note was protested, which, however, was subsequently paid, is insufficient to suggest insolvency or threatened insolvency. When Morgano was paid, he might well have supposed that the amount had been realized from sales of the canned goods, as had been promised. The amounts paid were borrowed from banks on pledges of canned goods. For the reason stated, I adhere to the conclusion substantially expressed by me at the close of the trial, viz. that recovery by the trustee under section 60 of the Bankruptcy Act (11 USCA § 96) is not warranted, it not having been proven that defendant creditor had reasonable cause to believe that payment of his debt was in effect a preference.

Nor is plaintiff entitled to recover under section 15 of the Stock Corporation Law of New York, as amended by Laws 1929, c. 653 (Consol. Laws, c. 59), for under that provision it was required that the trustee prove, not only that the bankrupt company paid the indebtedness to the defendant while insolvent, or while insolvency was imminent, with the intent to effect a preference, but also that the creditor had reasonable cause to believe that he was being preferred. The original statutory provision, in force when the action was begun, did not include the latter provision, and the amendment including the phrase was enacted during the pendency of this action and before trial.

It is contended by counsel for plaintiff that the amendatory provision is without retroactive effect, and that the original provision requiring an intent by the debtor to prefer a particular creditor has application. There are state court adjudications where it was held that an amendment is not accorded a retrospective construction, unless the amendment expressly or by implication included past transactions. But, in cases like this, where the remedy is purely statutory, it has repeatedly been held that, where a statutory amendment is enacted while an action is pending, and before trial or judgment, the action is to be governed by the amendment. This principle is contained in numerous adjudications of which Mfg. Co. v. Beecher, 97 N. Y. 651; Dieterich v. Fargo, 194 N. Y. 359, 87 N. E. 518, 22 L. R. A. (N. S.) 696; Globe Publishing Co. v. State Bank, 41 Neb. 175, 59 N. W. 683, 27 L. R. A. 854; Wirt v. Supervisors, 90 Hun, 205, 35 N. Y. S. 887; Laird v. Carlton, 196 N. Y. 169, 89 N. E. 822, 25 L. R. A. (N. S.) 189; Matter of Davis, 149 N. Y. 539, 44 N. E. 185, and Benton v. Wickwire, 54 N. Y. 226, are examples.

It must, therefore, be held herein that the statute, as amended before the trial and judgment, governs the rights of the parties herein. The cases cited by the trustee have been examined by me, but the weight of authority seems to be contrary to his view. It is, however, insisted that the bankrupt intended to prefer Morgano. It is true that a person ordinarily is presumed to intend the natural consequences of his act, but payment by a debtor corporation in the ordinary course of its business, and not payment to all, does not always warrant the inference of an intention to prefer or to receive a preference. The evidence must clearly disclose conditions from which the intent to effect a preference can be perceived. The evidence falls short in this respect, and also with respect to the provision requiring that the creditor shall have reasonable cause to believe that he is receiving a preference. In its entirety the evidence is capable of an interpretation consistent with the absence of wrongful intent or purpose. Lopez v. Campbell, 163 N. Y. 341, 57 N. E. 501. And see Joseph v. Raff, 82 App. Div. 47, 81 N. Y. S. 546.

The complaint is dismissed, without costs.