## THE POCAHONTAS.

## In re KEANSBURG STEAMBOAT CO.

District Court, D. New Jersey.
Oct. 18, 1937.

Theodore Strong & Son, of New Brunswick, N. J., and Harry E. Walburg, of Arlington, N. J., for claimants.

Snyder, Roberts & Pillsbury, of Atlantic Highlands, N. J., and Alexander, Ash & Jones, of New York City, for petitioner.

FORMAN, District Judge.

The Keansburg Steamboat Company is the owner of the passenger excursion steamer Pocahontas. The Fraternal Order of Eagles No. 1329 of New Brunswick, N. J., chartered this steamer for an all-day outing at Coney Island. On the morning of September 3, 1933, the steamer and crew was delivered to the charterer at New Brunswick, N. J.

During the course of the voyage and on September 3, 1933, the claimant, Ethel Forsythe, one of the charterer's party on board the steamer, was injured through the alleged negligence of the defendant. She claims to have received injuries during the course of the voyage, which she says were caused by a fall on a stairway. The steamer thereupon docked at Elizabethport so that she could be removed to the hospital.

On April 18, 1935, the claimant, Ethel Forsythe, and her husband, Hugh Forsythe, instituted suit against the said Keansburg Steamboat Company, a corporation, in the New Jersey Supreme Court, Middlesex county.

On November 6, 1936, shortly before said cause of action was about to be reached for trial in the Middlesex circuit of the New Jersey Supreme Court, the Keansburg Steamboat Company, as owner of the steamboat Pocahontas, her engines, boilers, etc., filed in this court a petition praying for limitation of liability in respect to any loss, damage, or injury, etc., occasioned by, or resulting from, the occurrence hereinbefore set forth. An ad interim stipulation was filed by the said petitioner in the sum of $1,600, and the said ad interim stipulation was based on the value of the said steamboat in the sum of $750, and the amount of earned freight of the said steamboat on said date in the sum of $850 (the charter hire).

By order of this court a monition was duly issued and an order of reference made to the commissioner to receive claims, etc., and an injunction issued preventing the claimants herein from proceeding with their action pending in the New Jersey Supreme Court.

It has been conceded by counsel for claimants that the ad interim stipulation filed in this proceeding by petitioners, amounting to $1,600, with interest from September 3, 1933, correctly represents the aforesaid value of petitioner's interest required to be surrendered under the provisions of the statute giving ship owners the right of limitation as they existed on September 3, 1933.

It is claimed that petitioner is now required under the amendments to the limitation of liability statute of August 29, 1935, and June 5, 1936, to surrender $60 per gross ton; it being alleged that the value of the vessel is not sufficient to secure, adequately, claimants against their loss.

The question presented in this case is whether the amendments to the statute limiting shipowners' liability are applicable to this proceeding notwithstanding the fact that they were enacted after this cause of action arose, that is, September 3, 1933, and after this proceeding was commenced.

The statute limiting the liability of shipowners prior to its amendments by the acts of August 29, 1935, and June 5, 1936, read as follows: 46 U.S.C.A. "§ 183. *Liability of owner not to exceed interest.* The liability of the owner of any vessel, for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise, shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred without the privity, or knowledge or such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending. (Rev.St. § 4283)."

In an endeavor to protect passengers more adequately, Congress added a proviso to the statute in question on August 29,

1935, which reads as follows: *"Provided, That* the total liability of the owner or owners of any sea-going sailing, steam, or motor vessel, whether American or foreign, other than tugs, barges, fishing vessels and their tenders, for the entire loss of life or personal injuries caused without the fault or privity of such owner or owners to any person, shall be in an amount not less than an amount equal to $60 for each ton of the tonnage of such vessel or vessels, or the amount of value of the interest of such owner in such vessel and her freight then pending, if the latter be the greater amount. The tonnage of a steam or motor vessel shall be her gross tonnage without deduction on account of engine room, and the tonnage of a sailing vessel shall be her registered tonnage, provided that there shall not be included in such tonnage any space occupied by seamen or apprentices and appropriated to their use. The owner of every sea-going vessel or share therein shall be liable in respect of every such loss of life or personal injury arising on distinct occasions to the same extent as if no other loss or injury had arisen." 49 Stat. 960 (1935–1936)

To clarify the statute further, an additional amendment was passed by Congress on June 5, 1936, as follows:

"(a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

"(b) In the case of any seagoing vessel, if the amount of the owner's liability as limited under subsection (a) is insufficient to pay all losses in full, and the portion of such amount applicable to the payment of losses in respect of loss of life or bodily injury is less than $60 per ton of such vessel's tonnage, such portion shall be increased to an amount equal to $60 per ton, to be available only for the payment of losses in respect of loss of life or bodily injury. If such portion so increased is insufficient to pay such losses in full, they shall be paid therefrom in proportion to their respective amounts.

"(c) For the purposes of this section the tonnage of a seagoing steam or motor vessel shall be her gross tonnage without deduction on account of engine room, and the tonnage of a seagoing sailing vessel shall be her registered tonnage: Provided, That there shall not be included in such tonnage any space occupied by seamen or apprentices and appropriated to their use.

"(d) The owner of any such seagoing vessel shall be liable in respect of loss of life or bodily injury arising on distinct occasions to the same extent as if no other loss of life or bodily injury had arisen.

"(e) In respect of loss of life or bodily injury the privity or knowledge of the master of a seagoing vessel or of the superintendent or managing agent of the owner thereof, at or prior to the commencement of each voyage, shall be deemed conclusively the privity or knowledge of the owner of such vessel.

"(f) As used in subsections (b), (c), (d), and (e) of this section and in section 183b of this title, the term "seagoing vessel" shall not include pleasure yachts, tugs, towboats, towing vessels, tank vessels, fishing vessels or their tenders, self-propelled lighters, nondescript self-propelled vessels, canal boats, scows, car floats, barges, lighters, or nondescript non-self-propelled vessels, even though the same may be seagoing vessels within the meaning of such term as used in section 188 of this title." 46 U.S.C.A. § 183.

The claimants contend that the amendments hereinbefore referred to relate merely to the remedial or procedural law, and for that reason they are applicable to this action, notwithstanding the fact that they will thereby operate retroactively. The petitioner argues that the amendments relate to the substantive law, and for that reason cannot be given retroactive effect. As an alternative defense petitioner will admit that the amendments are remedial statutes, but they are not applicable to this action because they contain nothing to indicate a congressional intent that they should be given retroactive effect and made applicable to claims arising prior to the effective date of the amendments. As a further defense, petitioner contends that the amendments do not apply because the vessel is not a "seagoing" vessel.

As a general proposition, statutes relating to the substantive law are not to be given retroactive application. On the other hand, statutes relating to the procedural or remedial law may, under certain circumstances, be given retrospective interpretation. The petitioner contends remedial legislation is not applied retroactively unless the intent so to do is clearly expressed in the statute itself. For that reason the petitioner argues these amendments cannot be applied to the facts in this case whether they are construed to concern the substantive or procedural law. The court then will confine its determination to whether or not procedural legislation must express within its terms or by implication an intent for retroactivity. If that is true, it is immaterial whether the amendments before the court relate to the substantive or procedural law. In either event the amendments will be inapplicable to the facts of this case.

In United States v. Magnolia Petroleum Co., 276 U.S. 160, 48 S.Ct. 236, 237, 72 L. Ed. 509, the respondent was given an allowance for excess payment of taxes. The Internal Revenue Act (Revenue Act 1921, § 1324(a), 42 Stat. 316) was changed with respect to allowance of interest on refunds (Revenue Act 1924, § 1019, 43 Stat. 346), and the question was whether the old act with respect to interest or the new act should apply. The court held that the old act was applicable, and stated: "Statutes are not to be given retroactive effect or construed to change the status of claims fixed in accordance with earlier provisions unless the legislative purpose so to do plainly appears. United States v. Heth, 3 Cranch 399, 413, 2 L.Ed. 479; White v. United States, 191 U.S. 545, 552, 24 S.Ct. 171, 48 L.Ed. 295; Shwab v. Doyle, 258 U.S. 529, 534, 42 S.Ct. 391, 66 L.Ed. 747, 26 A.L.R. 1454."

In United States v. St. Louis, S. F. & T. Ry. Co., 270 U.S. 1, 46 S.Ct. 182, 183, 70 L.Ed. 435, the question was whether an amendment changing the statute of limitations was applicable to an existing claim. The court stated: "That a statute shall not be given retroactive effect, unless such construction is required by explicit language or by necessary implication, is a rule of general application. It has been applied by this court to statutes governing procedure, United States Fidelity & Guaranty Co. v. United States, 209 U.S. 306, 28 S.Ct. 537, 52 L.Ed. 804; and specifically to the limitation of actions under another section of the Transportation Act of 1920, Fullerton-Krueger Lumber Co. v. Northern Pacific Ry. Co., 266 U.S. 435, 45 S.Ct. 143, 69 L.Ed. 367." 270 U.S. 1, at page 3, 46 S.Ct. 182, 70 L.Ed. 435.

In American Mutual Liability Insurance Co. of Boston v. Lowe (C.C.A.) 85 F.(2d) 625, 627, Judge Davis, of this Circuit, alluded to a certain statute giving the deputy commissioner the right to reconsider compensation awards. This statute was amended by inserting a provision therein limiting the right of the deputy commissioner to reopen the case to "one year after the date of the last payment of compensation." (33 U.S.C.A. § 922.) The court stated that the statute as amended gave no indication that it was to have retroactive effect and that it, therefore, should not be so interpreted.

More directly in point is the case of Humboldt Lumber Manufacturers' Ass'n v. Christopherson et al. (C.C.A.) 73 F. 239, 247, 46 L.R.A. 264, wherein suit was brought for negligent injury. The petitioner made application for limitation of liability under the provisions of the act of February 13, 1893 (46 U.S.C.A. § 192), which was enacted subsequent to the injuries by about four years. The said act provides, among other things: "If the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy, and properly manned, equipped, and supplied, neither the vessel, her owner or owners, agent, or charterers, shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel."

The court made this comment in reference to the above claim: "The acts complained of occurred in 1889, and therefore, if this statute was otherwise applicable in the circumstances of this case,— of which we express no opinion,—the statute would have to be given a retroactive operation to make it so. It is a well-settled rule of construction that this is not done except under the compulsion of language so clear and positive as to leave no room for doubt that such was the intention of the legislature. There is no such compulsion in the language of the act relied on, and we may not so construe it."

The plaintiff argues that the limitation of liability statutes are statutes of exemption, and that an amendment lessening the exemption of the debtor or defendant acts on all pending controversies not reduced to final judgment, and in some cases it has been held to act after final judgment. Following this major premise, the plaintiff cites a group of cases decided in the state tribunals.

In Laird v. Carton et al., 196 N.Y. 169, 89 N.E. 822, 823, 25 L.R.A.(N.S.) 189, subsequent to the entry of the judgment, a statute was enacted authorizing the issue of an execution on a judgment previously rendered and subjecting thereto property exempt at the time of the rendition of the judgment. This was an amendatory statute which began as follows (Code Civ. Proc.N.Y. § 1391, as amended by Laws 1908, c. 148): "Whenever a judgment has been recovered," etc. The court made this observation: "There is nothing in the language of the amendment to indicate a legislative intention that the right to issue execution against wages, earnings, or salary shall be confined to cases in which the judgments are hereafter to be recovered." "It is enough that a judgment 'has been recovered' when the execution is sought to be issued." The court, therefore, seems to say that such a statute will apply retroactively, unless there is an indication that it is to apply prospectively only. Such a rule is clearly opposite to the rule laid down in the federal courts, as illustrated by the cases hereinbefore cited.

In Brearley School, Ltd., v. Ward, 201 N.Y. 358, 94 N.E. 1001, 1002, 40 L.R.A. (N.S.) 1215, Ann.Cas.1912B, 251, the plaintiff recovered judgment against the defendant, upon which execution was returned unsatisfied. The defendant was a beneficiary of a trust fund which was created by a will admitted to probate in 1879. Prior to 1908 there was an exemption statute which limited the right of creditors to levy execution against the income of beneficiaries from trust estates. In 1908, a statute was passed by the Legislature of the state of New York (Laws 1908, c. 148, amending Code Civ.Proc. § 1391) permitting judgment creditors to levy execution against the income of the beneficiary of the trust. The plaintiff sought execution under the amendment so as to reach the trust funds. The defendant contended that as the statute was enacted long subsequent to the creation of the trust fund it was inoperative as far as the trust was concerned, and impaired a vested right if a retroactive effect was given to it. The court held to the contrary and to the effect that the amendment applied to existing trusts as well as trusts thereafter created, and authorized execution against the income from the trust fund. The case, however, contains this interesting language: "It seems equally clear that this amendment, so far as it relates to the income from trust funds, was *intended* to apply to then existing trusts as well as to trusts which should thereafter be established." (Italics supplied.) Thus, it appears that this court was concerned with a legislative intent for retroactive application.

In Berkovitz et al. v. Arbib & Houlbert, Inc., 230 N.Y. 261, 130 N.E. 288, the question involved was whether or not the Arbitration Law of New York applied to pre-existing contracts, and was retroactive as to those. Justice Cardozo, speaking for the Court of Appeals, held that the amendment applies to pre-existing contracts, but does not apply to pending actions. Certainly, this case would be of no help to the claimant, because in the case at bar the action was pending at the time of the passage of the amendments.

These cases demonstrate a variety of rules concerning the construction and applicability of statutes to causes of action arising before their passage. In other cases cited by the plaintiff, the courts seemed unconcerned about a pronounced legislative intent for retroactivity. Some of those cases were concerned with repealing statutes and not amendments, and for that reason they are not applicable to the case at bar. Another group of the same line of cases decided in state tribunals related to the procedural law, but they cannot be applied in this case due to the precedents set up in our own courts to which we have alluded heretofore.

In Miceli v. Morgano (D.C.) 36 F.(2d) 507, 509, the trustee in bankruptcy was suing for the recovery of an alleged preference. The claim was partly based upon section 15 of the Stock Corporation Law of New York as amended by Laws of 1929, c. 653 (Consol.Laws, c. 59) which amendment was made during the pendency of the action. The amendment required that the claimant must prove that the creditor had reasonable cause to believe that he was being preferred. The plaintiff contended that the amendatory provision was inapplicable. The court stated: "There are state court adjudications where it was held

that an amendment is not accorded a retrospective construction, unless the amendment expressly or by implication included past transactions. But, in cases like this, where the remedy is purely statutory, it has repeatedly been held that, where a statutory amendment is enacted while an action is pending, and before trial or judgment, the action is to be governed by the amendment. This principle is contained in numerous adjudications of which Victory Webb Mfg. Co. v. Beecher, 97 N.Y. 651; Dieterich v. Fargo, 194 N.Y. 359, 87 N.E. 518, 22 L.R.A.(N.S.) 696; Globe Publishing Co. v. State Bank, 41 Neb. 175, 59 N.W. 683, 27 L.R.A. 854; Wirt v. Supervisors, 90 Hun 205, 35 N.Y.S. 887; Laird v. Carlton, 196 N.Y. 169, 89 N.E. 822, 25 L.R.A.(N.S.) 189; Matter of Davis' Estate, 149 N.Y. 539, 44 N.E. 185, and Benton v. Wickwire, 54 N.Y. 226, are examples."

It will be noticed that not a single case decided by the federal courts is cited to substantiate this proposition.

The legislative discussion of these amendments reveal that Senator Copeland, in asking the Senate's consideration of the bill, made the following comment:

"There has been pending here since January a bill to provide for limitation of liability of shipowners in connection with the *Morro Castle* disaster where 124 persons lost their lives. It was found that under the laws as they exist, only the salvage value of the ship could be used to reimburse the losses incurred by reason of the accident. Under the British law provision is made for insurance fixed at 15 pounds per gross ton to cover both property and life.

"The bill I seek to bring up, which has been considered in the House and which was unanimously reported by the Commerce Committee yesterday, provides that an insurance of $60 per gross ton of the vessel must be carried, which in the case of the *Morro Castle would have meant about $1,000,000 insurance, whereas the salvage value now is only $20,000.* The bill seeks to give protection such as ought to have been afforded long ago". 79 Congressional Record, part 13, page 14109. (Italics supplied.)

In the House, the following comment was made by Representative Sirovich in support of the bill: "If my bill which is now being considered is passed, the *Morro Castle* victims, instead of having

had only $20,000 against which the victims could sue, *would have had* at least between $600,000 and $700,000." (Italics supplied.)

There is nothing in the above-quoted language to indicate that Congress intended the amendments should apply retroactively. Instead, it seems clear that prospective application only was intended. A fortiori if retroactivity had been intended, Congress conceivably might have made the amendments apply in behalf of the victims of the *Morro Castle* disaster, or at least there would have been some discussion in Congress prior to the passage of the amendments indicating intended aid to those very victims.

Under these circumstances, the court is of the opinion that the amendments in the case at bar are inapplicable, because a legislative intent for retroactivity does not appear. Accordingly, claimants' motion for additional security is denied.