OPINION OF THE COURT
Theodore A. Kelly, J.
Petitioner brings this article 78 proceeding on behalf of himself and all persons similarly situated to annul respondent Berle’s determination denying his application for a permit to take a deer of either sex during the 1978 New York State big game season. Petitioner also seeks a declaration that ECL 11-0913 (subd 1, par b) and 11-0913 (subd 2, par f) are unconstitutional, and other related relief, including attorneys’ fees.
The taking of antlerless deer in New York State by hunting was traditionally prohibited. For various reasons, including overpopulation, excessive winter kill and losses caused by lack of food, severe weather conditions and various biological factors, the New York State deer management policy was res *937 tructured. Today, the taking of deer of either sex is allowable through issuance of a "deer management permit” by the New York State Department of Environmental Conservation (hereinafter DEC). The Environmental Conservation Law permits DEC to order the issuance of such permits whenever, in its opinion, the population of deer in any area of the State is such that additional harvest is reasonably necessary to manage the deer herd in balance with the available range and natural food supply. The permit allows the taking of one deer of either sex for each hunting group holding the permit, in addition to the limit of one deer that may otherwise be taken by one person in a license year. (ECL 11-0913, subd 1, par a.) ECL 11-0913 also provides as follows regarding such permits:
"b. In the issuance of permits, the department may give preference to state residents and may give preference, to the extent of not more than 50 percent of the permits to be issued for a specified area, to the applications of groups which include a person who owns at least 50 acres of land in one parcel in the specified area * * *.
"c. 'Owner’ as used in this section shall include the owner of record of such parcel, or a purchaser of such parcel under an executory contract duly recorded in the office of the recording officer in the county in which real property to which it relates is situate, who actually occupies and cultivates such parcel.
"2. Each such order shall specify, with respect to the permits to which it relates: * * *
"f. The number of persons, no fewer than one nor more than six, who must join in the application”.
The statute originally referred to these permits as "deer hunting party permits” (L 1972, ch 664). While they are now termed "deer management permits”, they are referred to by deer hunters as "party permits”.
The DEC designated 29 areas as "deer management units” in 1978. A certain number of "party permits” were allocated for each unit. The DEC also published regulations concerning the minimum size of hunting groups whether they were "landowner” groups or "regular” groups.
On September 2, 1978, petitioner, a New York State resident and the holder of a New York State combined hunting, fishing and big game license, applied to respondent for a "party permit” for State Unit Number 58, which encompassed parts of Greene County and Schoharie County. Under the *938 DEC regulations, "landowner” groups in Unit Number 58 were required to contain at least 2 persons and "regular” groups were required to contain at least 3 persons. In the letter accompanying his application, petitioner acknowledged that he did not belong to a group. It was also apparent that he was not an "owner” as that term was defined in ECL 11-0913 (subd 1, par c).
On September 6, 1978 respondent returned petitioner’s application unprocessed for the following reasons: (1) that the smallest deer management group for the 1978 big game season could consist of no less than two persons; and (2) that petitioner was not a landowner in the unit where he wished to hunt.
Petitioner contends that respondent’s decision was arbitrary, capricious and violative of the "equal protection” clauses of the New York State and United States Constitutions. He further asserts that ECL 11-0913 (subd 1, par b) and 11-0913 (subd 2, par f) are unconstitutional, in that they create preferred groups of individuals who may obtain "party permits”. He also alleges that deer control can be achieved by the DEC through means which are nondiscriminatory.
The preservation of fish and game is a matter within the public interest since, without adequate and special protection, they would be wasted and destroyed. (Barrett v State, 220 NY 423.) It is, therefore, within the ambit of the State’s police power to enact laws for the preservation of fish and game and to secure their beneficial use in the future to the citizens of the State. (People v Clair, 221 NY 108; Dieterich v Fargo, 194 NY 359.) Any statute which is under constitutional attack is afforded a strong presumption of validity and the party attacking the constitutionality of the statute bears a heavy burden. (Nettleton v Diamond, 27 NY2d 182, 193.) The presumption of constitutionality may be upset only by proof persuasive beyond a reasonable doubt (Montgomery v Daniels, 38 NY2d 41). It is also presumed that the Legislature has investigated and found facts necessary to support the legislation enacted by it, as well as the existence of a situation showing or indicating its need or desirability (Hotel Dorset Co. v Trust for Cultural Resources of City of N. Y., 46 NY2d 358, 370).
In this court’s view the DEC’s regulation of the number of individuals who must join in an application for a "party permit” is within the State’s police power, and does not *939 constitute an unconstitutional infringement of petitioner’s rights. It is apparent from the documentary evidence submitted by respondent that the taking of antlerless deer is considered an effective tool in the management of a healthy deer population. Each year, appropriate female antlerless deer harvest quotas are determined for each management area where harvests are required. Restricting "party permit” applications to groups, rather than to individuals, insures, that a greater number of hunters will be in the field in pursuit of the antlerless deer which are to be harvested. All properly licensed hunters, including petitioner, are eligible to form a group and to make application for a "party permit.” A legislative judgment as to a classification will be upheld if any state of facts can reasonably be conceived to sustain it, or if the validity of the classification is fairly debatable. (9 NY Jur, Constitutional Law, § 295.)
It is also reasonable to grant a permit preference to landowners within the specific unit. The rationale of this preference is that if landowners are assured of obtaining a "party permit”, they will be less likely to close their lands to other hunters. Such a regulation serves a legitimate State interest in having the greatest amount of area possible open to members of the public for the purpose of hunting.
The application, accordingly, is denied in its entirety and the petition is dismissed.